## Commonwealth *v.* Reid, Appellant.

Argued April 13, 1936.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Nathan J. Bonx,* with him *Isadore Katz,* for appellant.

*George Garrison Shafer,* for appellee.

OPINION BY JAMES, J., September 30, 1936:

This is an appeal from a conviction and sentence upon an indictment for highway robbery.

On May 15, 1935, a bench warrant was issued by the president judge of Monroe County to be lodged as a detainer against the appellant, then confined in the Eastern Penitentiary. On August 26, 1935, an alias writ of habeas corpus was issued, appellant was brought to the Monroe County jail, and on September 23, 1935 an indictment was found which charged the appellant and Patsy DeMauro jointly with the robbery of a truck and trailer containing fifty bales of raw silk of the value of $40,000. The crime was committed on April 7, 1934 at 12:30 A. M. A motion was made by the defendant alleging illness of his counsel and the case was continued. Defendant was then told that his trial would be held at the December Sessions and that there would be no further delay unless the same was absolutely unavoidable. The docket entries show: "And now, Dec. 10, 1935, this case came on to be heard. Upon motion made by defendant's counsel, Court granted continuance of trial until 9 A. M. Dec. 11, 1935, owing to absence of material witness for the defendant. And now, Dec. 11, 1935, this case came on to be heard. Defendant's counsel, Mr. Rosser, requested of Court that he, with his associate counsel, be permitted to withdraw their appearance for the defendant,

h

James Reid, due to the fact that the defendant has become unmanageable and unreasonable at this time. Court granted the request, and directed that defendant be brought into Court for trial. Under protest, Defendant was brought before Court by officers in charge. Court appointed G. W. Nitrauer, Esq., to serve as Counsel for defendant, whereupon defendant refused to accept counsel in his case. The defendant, refusing to answer to the charges contained in the indictment, the Court directed the Clerk of Courts to enter a plea of 'Not Guilty' for the defendant.". The details of what occurred are found in the court's opinion as follows: "...... His Counsel, Everett A. Rosser and Thomas J. Howley, were present. This case was called and Counsel for defendant asked for a delay as certain witnesses were not at that time present in Court. This delay was granted and the case carried on until the following day and at the instance of the defendant a subpoena was served in Scranton, Pennsylvania, on Philip J. Coleman, a witness for defendant. Service was made by an officer of this Court. This witness refusing to obey the subpoena, at the instance of defendant's Counsel, an attachment was issued.

"The case was again called for trial and Counsel for defendant informed the Court that a witness, one Alma Colton who was a resident and for a considerable time had been a resident of Boston, Mass., would not come to Court. The residence of this witness was known to this defendant and to his Counsel prior to September Sessions when the case was continued at defendant's request. This witness, of course, was not subject to subpoena or attachment issued by this Court. No effort to take depositions of this witness had been made. The defendant chose to take the chance of the presence of this witness at his trial. It was stated that the witness refused to come by reason of the illness of her husband. Of the illness of her husband, we had and have no knowledge other than the mere statement that

she had telegraphed and that for that reason she would not come. It was stated to defendant's Counsel that there was not sufficient before the Court to move the Court to grant a continuance. Counsel for defendant stated that in view of the proceedings in this case up to that time and previous continuances that he did not feel that it would be fair to ask a further continuance on account of the witness in Boston who was not within the jurisdiction of this Court; that there were other witnesses for the defendant and that her testimony would be cumulative. The case was called for trial.

"In a conference between defendant and his Counsel and others, for some reason unknown to the Court defendant discharged his Counsel. In a loud and boisterous manner and voice audible in the courtroom, although the conference was in a side room, the defendant shouted, 'I do not want you to defend me—I do not want anything to do with you.' Counsel came before the Court and stated that defendant refused to consult with him or to be advised by him and that he, the defendant, did not want him for his lawyer; that he saw no alternative but that of asking to withdraw. Then the defendant was brought into Court. He demanded in a loud boisterous, belligerent manner that his trial be postponed. His Counsel, Everett A. Rosser and Thomas J. Howley, were there in Court ready to proceed. He shouted that he did not want anything to do with his Counsel, Rosser and Howley; that he did not want them to defend him.

"The conduct of this defendant was boisterous, violent, and vicious, causing an uproar in the Court and requiring four officers to subdue him. He refused to proceed with the trial. The Court offered to appoint Counsel to protect the interests of the defendant and did appoint Grant W. Nitrauer, Esq., a lawyer at this Bar, of good repute and ability. Defendant boister-

ously refused his services; refused to talk to him; shouted that he wanted nothing to do with him. The conduct of this defendant was so violent and so vicious that in order to protect the Court officers and attendants it was necessary to place handcuffs upon him. The trial proceeded in the regular way. Defendant refused the services of any lawyer and, though repeatedly asked, refused to permit an attorney to cross-examine any witness and refused to question or cross-examine any witness who was called to the stand. We were, prior to the beginning of this trial, informed and know that there were in Court witnesses summoned on behalf of this defendant, in fact, the witnesses on whom they were relying for the defense of this defendant with the exception of Alma Colton and one, Philip J. Coleman. This latter witness was in the custody of an officer on an attachment issued at the instance of this Court and was available as a witness and could have been called had the defendant so desired. The defendant, though informed by the Court of his rights and repeatedly offered assistance of Counsel, refused the assistance of Counsel; refused to call any witness on his behalf; and, refused to testify, sitting at the defendant's table with a sneer upon his face and muttering comments as to his Counsel and the trial.

"The case was submitted to the jury. The defendant was asked if he had anything to say in his own behalf to the jury and did not reply to this inquiry made by the Court. The jury rendered a verdict of guilty and the defendant was sentenced. No motion or reason for new trial was made or filed." On December 11, 1935 sentence was imposed.

From the docket entries no further action was taken until January 15, 1936 when Isadore Katz, Esq., of the Philadelphia Bar, and Jas. T. Kitson, Esq., of the Monroe County Court entered their appearance for the defendant and the same day a motion for new trial was filed. On January 23, 1936, by petition filed, a rule was

granted, returnable February 3, 1936, upon the Commonwealth to show cause why the motion for new trial should not be filed, to which an answer was filed February 3, 1936. The rule to show cause was argued on February 3, 1936 and on February 8, 1936, the rule was dismissed, opinion filed February 17, 1936, and an appeal taken to this court, February 26, 1936.

The present appeal was not taken until February 26, 1936, seventy-six days after the imposition of sentence; whereas, the Act of May 11, 1927, P. L. 972, 12 PS §1136 provides that "No appeal shall be allowed . . . . . . unless taken within forty-five days from the entry of the sentence or order." However, in view of what may be termed a misapprehension of appellant's counsel, the gravity of the charge and the sentence imposed, we have concluded to review the record solely to determine whether the trial judge abused his discretion in dismissing the rule to show cause why the motion for a new trial should not be permitted to be filed nunc pro tunc. Appellant's first contention is that the evidence as to identification was insufficient, as a matter of law, to sustain the conviction. Albert Shafer, the driver of the truck, describing the details of the robbery, testified: ". . . . . Q. Did you notice any characteristics about him? A. I saw a scar on his face. Q. Have you determined who he may be? A. That man right there. Q. James Reid sitting there? A. Yes. Q. When you first gave his description to the police did you describe him as a man with a scar? A. Yes. Q. And subsequently did you identify him, on different occasions? A. Yes. Corporal Santee, of the State Police, showed me a picture of him and I identified the picture. Q. Did you afterwards go to New York City when we were trying to extradite him? A. Yes, we were all in the court room— Q. How big a court room? A. Bigger than this here. Q. Full of people? A. Yes. Q. Go ahead. A. One of the County Detectives from Lackawanna

County took me out of the room and they distributed a bunch of persons in amongst the audience and Sullivan, of the New York detectives, went around with me, and I picked him out. Q. He was the man who held you up and had the trooper's uniform on? A. Yes ...... Q. Mr. Shafer, are you satisfied in your mind this man, James Reid, is the man that held you up? A. Yes. Q. You are positive of that? A. No, sir. Q. You do not want to make a mistake? A. No, sir. Q. You are satisfied this is the man? A. Yes, sir."

Appellant earnestly argues that the question and answer—"Q. You are positive of that? A. No, sir"—destroyed the value of the testimony of the witness as to the identification of the defendant. This question and answer must be read in connection with his prior and later testimony wherein he determined who the defendant was, identified him by his picture, picked him out amongst others, and was satisfied that he was the man who committed the robbery. Our version of the meaning the witness intended to convey to the jury is that in his mind he was satisfied the defendant was the robber, but did not wish to assert that it was not to be disputed or disproved. However, whether his identification was sufficiently convincing was a question of fact for the jury. We are fully cognizant that the testimony as to identity should be considered with great caution, but, in the final analysis, it is the jury's province to determine whether it convinced them beyond a reasonable doubt. "Opinion, in so far as it consists of a statement of an effect produced on the mind, becomes primary evidence, and hence admissible whenever a condition of things is such that it cannot be reproduced and made palpable in the concrete to the jury. Especially is this the case with regard to questions of identification, where a witness is allowed to speak as to his opinion or belief. The opinion, belief, judgment, or impression of an ordinary witness as to

the identity of a person or an object is admissible in evidence, provided such testimony is based upon his own knowledge and not upon information furnished by another. Identification may be made through the preception of any of the senses, and it is not essential that the witness should himself be free from doubt as to the correctness of his opinion ......": Wharton's Criminal Evidence, Vol. 2, p. 1776, §1015. "Proof beyond a reasonable doubt, or [of] the identity of the accused as the person who committed the crime, is essential to a conviction. The evidence of identification, however, need not be positive and certain. A witness may testify that it is his belief, opinion, or judgment that the accused is the person who committed the crime. The indefiniteness and uncertainty in the testimony, of course, affects its weight": Wharton's Criminal Evidence, Vol. 2, p. 1626, §932. See *Com. v. Roddy,* 184 Pa. 274, 39 A. 211.

The second reason advanced by appellant is that the refusal of the trial judge to grant a continuance, under the circumstances, was an abuse of judicial discretion. An application for a continuance is addressed to the sound discretion of the court, and, unless there has been an abuse of discretion, the ruling of the trial judge will not be disturbed on appeal: *Com. v. Meyers,* 290 Pa. 573, 139 A. 374; *Com. v. Chrostowski,* 112 Pa. Superior Ct. 466, 171 A. 901. The trial of this defendant was first set for the September Sessions, but was continued for one term by reason of illness of counsel and had been continued from the date set for trial—December 10—to December 11, owing to the absence of a material witness who was in court on the morning of December 11. Appellant's main reason for the continuance of the case was the absence of one Alma Colton of Boston, Massachusetts, who was unable to attend on account of the illness of her husband, which fact was made known by a telegram which was alleged to have

been received on the morning of December 11. Had this been the sole witness, upon which appellant relied for a continuance, much merit could be seen in his application; but her testimony was cumulative to the testimony of one Joseph Miller, whose affidavit is attached to the petition for rule for a new trial averring that the defendant was in his restaurant at the time of the alleged robbery, and one Philip J. Coleman for whose presence an attachment had been issued at the instance of defendant's counsel. Under these circumstances, where witnesses were present who would have been able to establish the defense of alibi which he had set up, it was not necessary for the court to continue the case until every witness could be present upon whom appellant relied for his defense. It may be as asserted that appellant expected the presence of Alma Colton, and which fully explains his failure to obtain her deposition; but it comes with poor grace in this appellant to have refused, when the trial was proceeding, to have called upon the two witnesses who were in court on the morning of the trial.

Appellant further complains no effort had been made to produce the New York officers who were present when the appellant was identified by the witness for the Commonwealth, asserting that if these officers were called they would have seriously undermined the force and effect of the testimony with reference to identification. As to this feature of the case, we find no supporting affidavits as to what the New York officers would have testified to. In refusing the continuance, we find no such abuse of discretion as would warrant the granting of a new trial.

We see no merit in the assignments of error which complain of the action of the trial judge in proceeding with the trial after the officers had, in the presence of the jurors, used force and handcuffs to quell the protests of the accused and his demand for a continuance

and in shackling him during the trial. The general rule applicable is found in 16 C. J. 819, §2075, where it is said: "A person undergoing trial for a criminal offense should be free from shackles, unless, in the sound discretion of the trial court, they are deemed necessary to restrain him from doing violence to others, or to prevent his escape." No attempt is made by counsel for appellant to dispute the statement made by the trial judge that "the conduct of this defendant was boisterous, violent, and vicious, causing an uproar in the Court and requiring four officers to subdue him ...... The conduct of this defendant was so violent and so vicious that in order to protect the Court officers and attendants, it was necessary to place handcuffs upon him." Under such circumstances, the trial judge could have taken no other course than was adopted. See *Com. v. Weber*, 167 Pa. 153, 31 A. 481.

From our examination of this record, we are convinced that the trial judge allowed the appellant every reasonable indulgence that he was entitled to receive consistent with the duty of the court to protect the interest of the Commonwealth; and that appellant's complaints are largely the result of his obstinacy and perversity. The testimony fully justifies the conviction and in refusing the continuance and in shackling the defendant, we find no abuse of discretion.

Judgment affirmed.