Commonwealth ex rel. Nagle, Appellant, *v.* Day.

Argued March 5, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Charles F. G. Smith,* for appellant.

*Ray A. Gardner,* District Attorney, for appellee.

OPINION BY CARR, J., July 17, 1956:

This is an appeal from the Order of the Court of Common Pleas of Wyoming County refusing a writ of habeas corpus for the discharge of a prisoner who had pleaded guilty allegedly as the result of official coercion. On June 25, 1938, in the Court of Quarter Sessions of Wyoming County, Charles Nagle, the relator, signed pleas of guilty to indictments returned by the Grand Jury to Nos. 41, 42 and 43, January Term, 1938, and was sentenced to imprisonment in the Eastern Penitentiary of Pennsylvania, where, by reason of repeated violations of a subsequent parole he is still confined. Of the three indictments, the first two charged him with breaking and entering the State Liquor Store at Meshoppen on the nights of November 5th and December 17, 1937 and taking and carrying away large quan-

tities of assorted liquors, and the third with having and receiving a stolen truck used to transport the stolen liquor.

On July 28, 1955 the relator applied to the Court below for a writ of habeas corpus alleging that at the time of his arrest and conviction he was illiterate, being able only to sign his name; that upon being arrested he was held incommunicado and thereby prevented from securing counsel for his defense; that he was beaten, threatened, and frightened by the arresting officer into signing confessions not read or explained to him; and that when the confessions had been thus unlawfully procured he was rushed into Court handcuffed and under heavy guard where he was again denied the benefit of counsel, required to plead guilty to the indictments in ignorance of their contents, and thereupon peremptorily sentenced to long imprisonment. President Judge FARR who had received the pleas in open Court and imposed the sentences years before, allowed a rule to show cause why the writ should not be issued, ordered the relator to be produced, heard his testimony and that of the arresting officers, and at the conclusion of the hearing, being unable to find any merit in the relator's allegations, discharged the rule and remanded him to the custody of the Warden, later filing a comprehensive opinion in which he discussed the evidence at length and cited the applicable law.

The record discloses that the relator, who was twenty-eight years of age at the time of his conviction and sentence, was not unfamiliar with criminal procedure. On February 7, 1927, while still in his teens, he had pleaded guilty to thirteen indictments in Luzerne County for highway robbery, burglary and larceny, and had been committed to the Pennsylvania Industrial School at Huntington. Again on June 3, 1929, less than six months after his release from that institution, he had

608

been convicted in Luzerne County of the larceny of an automobile, and on June 19, 1929 sentenced to imprisonment in the Eastern Penitentiary, where s. remained until July 12, 1936. Needless to say previous experience was decidedly pertinent in determining whether he was aware of the gravity of the charges and competent to protect his legal and constitutional rights. *Commonwealth ex rel. Richter vs. Burke,* 175 Pa. Superior Ct. 255.

The proceedings in Wyoming County began with his arrest by the State Police on December 25, 1937 as the result of information received by them during the course of their investigation of his breaking into the liquor store at Meshoppen. He was taken by them to the State Police Barracks at Wyoming in Luzerne County for questioning, and there on December 27th and 29th he made, as the officers testified, full and detailed confessions, naming as accomplices men the officers attempted to locate and bring in to confront him. The officers denied that they had abused or mistreated him, stating that they typed the confessions exactly as he made them in his own words, after which they read them to him and he voluntarily signed them. Then, on December 30, 1937, which was but five days after his arrest, he was taken to Tunkhannock, given a preliminary hearing before a Justice of the Peace, and lodged in the county jail. It is argued that his detention at the barracks for this brief period without being permitted to communicate with anyone outside constituted a denial of due process, but the cases are all to the contrary; there is no prescribed time within which a preliminary hearing must be held: *Commonwealth ex rel. Lockoski vs. Claudy,* 172 Pa. Superior Ct. 330; *Commonwealth vs. Shupp,* 365 Pa. 439. Moreover, the fact of his detention goes only to the circumstances under which the confessions were procured, and since they

were not used against him, it is wholly immaterial; *Commonwealth ex rel. Lockoski vs. Claudy*, 172 Pa. Superior ～～～ 333. He admits that after he was lodged in the jail h～ ～ promptly visited by his sister and an attorney she～～d consulted in his behalf. It is apparent, however, that the relator was not so much concerned with the preparation of his defense as with avoiding a trial, for on January 15, 1938 he escaped from the jail and was a ～gitive until apprehended in Baltimore, Maryland o～June 22, 1938. On June 26, 1938 he was returned to～Tunkhannock, and on June 28, 1938 was taken into ～～ before the president and two associate judges in v～～se presence he signed his pleas without any vocal or other outward manifestation of dissent.

The official transcript of the proceedings at several times shows that the Court inquired of him whether he had anything to say and that he announced, "No". He made no complaint of mistreatment by anyone and no request for counsel. Even after sentence had been pronounced and he had been apprised of its meaning by the court, he did not indicate in any way that he had been intimidated or misled. He asked only for information concerning the possibliity of a parole, saying, "Your Honor, I would like to know if I can have my parole runni～ concurrently with the time", to which Judge FARR replied that a parole was a matter not within the control of the court. In these circumstances it is difficult indeed to regard his long delayed complaint as made in sincerity and truth. He was not then under any coercion but under the protection of the court, and had every opportunity to make known all that he now alleges. It may be that he was taken into court in handcuffs, but he was not tried before a jury, and even if he had been, the question whether he was unjustifiably handcuffed is not one to be raised in habeas corpus, except possibly under circumstances showing a gross

610

abuse of discretion: *McClellan vs. Humphrey,* 83 F. Supp. 510, affirmed 181 F. 2d 757 (3d. Circuit) ; *Commonwealth vs. Reid,* 123 Pa. Superior Ct. 45~~~~.

The subsequent conduct of the relator lends no additional credibility to his testimony. On September 15, 1948 he was released from the penitentiary on parole to remain on parole until December 30, 1965, the date of the expiration of his maximum time, but in November, 1951 he was arrested in Montgomery County for breaking, entering and larceny, and again being convicted, was sentenced to one year in the Montgomery County prison. When released by the Montgomery County authorities on December 25, 1952 he was taken into custody in Berks County, convicted, and sentenced to imprisonment for a term of from two and one-half to five years in the Eastern Penitentiary, in consequence of which his aggregate maximum sentences will not now expire until September 24, 1970.

As we have said many times, the credibility of all witnesses, including the relator, is for the hearing Judge to determine: *Commonwealth ex rel. Howard vs. Claudy,* 175 Pa. Superior Ct. 1. We are satisfied that Judge FARR evaluated the testimony fairly and impartially and reached a proper conclusion.

The order of court below is affirmed.