482 A.2d 255

**COMMONWEALTH of Pennsylvania**

v.

**Lawrence GRAHAME, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 28, 1983.

Filed Sept. 7, 1984.

Petition for Allowance of Appeal Denied Feb. 8, 1985.

Gregory R. Reed, Easton, for appellant.

Michael Vedomsky, Assistant District Attorney, Easton, for Commonwealth, appellee.

Before WICKERSHAM, MONTEMURO and MONTGOMERY, JJ.

MONTEMURO, Judge:

This is an appeal from a judgment of sentence. On May 9, 1981, a jury found the appellant, Lawrence Grahame, to be guilty of robbery,[1] recklessly endangering another person [2] and conspiracy.[3] The appellant filed timely post-verdict motions which were argued to the court *en banc*. On April 30, 1982, the court issued an order and opinion denying these motions. On July 16, 1982, the appellant was sentenced to seven and one-half (7½) to fifteen (15) years imprisonment on the charge of robbery, one (1) to two (2) years imprisonment on the charge of recklessly endangering another person, and one (1) to two (2) years imprisonment on the charge of conspiracy. All sentences were imposed so as to run concurrently. This timely appeal followed.

1. 18 Pa.C.S. § 3901.

2. *Id.* § 2705.

3. *Id.* § 903.

The appellant asks us to consider multiple allegations of error by the trial court; however, we need only consider the appellant's contention that the court erred in denying the appellant's demurrer to all charges for want of sufficient evidence to submit the case to the jury.

> We note initially that for purposes of ... [his] demurrer, ... [appellant] admitted all the facts which the Commonwealth's evidence tended to prove and all inferences reasonably deducible from those facts. *Commonwealth v. Long,* 467 Pa. 98, 354 A.2d 569 (1976); Act of June 5, 1937, P.L. 1703, No. 357, § 1, 19 P.S. § 481. In ruling on a demurrer the proper test to be applied by the trial court is whether the Commonwealth's evidence and all reasonable inferences therefrom is sufficient to support a finding by the trier of fact that the accused is guilty beyond a reasonable doubt. *Commonwealth v. Duncan,* 473 Pa. 62, 373 A.2d 1051 (1977). (Footnote omitted).

*Commonwealth v. Wimberly,* 488 Pa. 169, 171, 411 A.2d 1193, 1194 (1979). *See also, Commonwealth v. Gilliard,* 300 Pa.Super. 469, 446 A.2d 951 (1982).

The evidence presented by the Commonwealth was essentially the testimony of five witnesses: Pamela Kranich, Alton Parks, Nicholas E. Englesson, Detective Joseph Mugavero and Donald Kowalski.

Pamela Kranich testified that on December 16, 1980, she was employed as a cashier at the Food Lane Supermarket on Berwick Street in Easton. At approximately 7:30 P.M., a young black male entered the store. Ms. Kranich recognized the male as Alton Parks, whom she had known previously. Parks stood near the door for a few minutes, and then approached Kranich. He inquired if the store carried "hats". Kranich replied negatively.

Parks left the store, but returned after a few minutes with two other black males. At the outset of Mrs. Kranich's testimony, she stated, "he came back in with two other gentlemen, which [sic] are sitting right in front of us." (N.T. at 23). She identified one of the men as appel-

lant's co-defendant, Darnell Williams. The prosecutor then asked:

Q. I repeat my question, where was Mr. Grahame at the time?

A. Standing next to Darnell.

Q. When you say Mr. Grahame, is that person present here in the courtroom today?

A. Yes he is.

(N.T. at 24–25). She then pointed out the appellant.

The three men went to the health and beauty aids section of the store, remaining there for a few minutes. They then proceeded to the "cupcake aisle." One of the men picked up a cupcake or pie and brought it up to the register. When Ms. Kranich rang up the purchase, Darnell Williams produced a sawed-off shotgun. The three men reached into the open cash drawer and took all of the money, which they stuffed into a gym bag. The men left and Ms. Kranich alerted the police by means of a security alarm.

Approximately two to three weeks later, Detective Mugavero showed an array of six to eight photographs to Ms. Kranich from which she was able to pick out a photograph of Darnell Williams as one of the men who robbed the store.[4] On March 18, 1981, Mrs. Kranich, accompanied by Detective Mugavero and Assistant District Attorney Nicholas Englesson, went to Northampton County Prison to conduct a line-up. The first line-up was comprised of five males, but did not include any of the alleged perpetrators of the robbery. Ms. Kranich did not identify anyone as one of the robbers. A second line-up was conducted; this one comprised of ten males including the appellant. Ms. Kranich failed to identify the appellant as one of the robbers. At the time of the line-up, she admitted to defense counsel that she did not get a good look at the third man. (N.T. at 66). Ms. Kranich also testified, thusly:

Q. How was the lighting in the store that evening?

4. Approximately one week after the robbery, Ms. Kranich picked out a photograph of Alton Parks from an array of approximately ten pictures.

A. Clear.

Q. Clear. About as clear as the courtroom today?

A. Yes.

Q. So you had no problem whatsoever seeing these perpetrators that came into the market?

A. Yes.

Q. You did not have any problem, did you?

A. No.

Q. You got a good look at them?

A. I only got a look at two of them.

Q. Who are the two you got a good look at?

A. Alton Parks and Darnell Williams.

Q. Did you get a good look at the gentlemen seated over there to my left?

A. I took a quick glance.

Q. But not a good look?

A. No.

Q. Did you ever see him before?

A. No, I have not.

Q. Did you ever see him after?

A. No.

Q. You did not?

A. No.

Q. Do you recall having a preliminary hearing on this matter?

A. Yes, I do.

Q. So you saw him there, didn't you?

A. Yes.

Q. Okay. Do you recall having a line up which you were present concerning this case?

A. Yes.

Q. And you saw him there, too, didn't you?

A. I wasn't sure.

Q. Well, did you or didn't you?

MR. VEDOMSKY: She just testified she was not sure.

THE COURT: The objection is sustained.

Q. You do not know whether or not he was present at the line up?

A. No.

(N.T. at 56–57). She further admitted that at the preliminary hearing in this matter she had testified that "All blacks look alike." (N.T. at 61). Cross-examination of Ms. Kranich concluded with this exchange:

Q. How many times did you tell me, if you remember, that you did not get a good look at the third person?

A. Many of [sic] times.

Q. Many of [sic] times. One was at the line up, correct?

A. Yes.

Q. And once you testified under oath at the preliminary hearing that you did not get a good look at the third guy, correct?

A. Yes.

Q. And right here at trial, before these 12 jurors, you are stating that you did not get a good look at the third person, right?

A. Right.

Q. And you could not pick him out in a line up, either, could you?

A. No.

Q. So, basically, Miss Kranich, you really do not know who that third person was, do you? Do you, really?

A. No.

(N.T. at 66–67).

On redirect examination, the prosecutor attempted to rehabilitate Ms. Kranich with respect to her identification testimony:

Q. Okay. You identified Alton Parks as being one of the perpetrators; is that correct?

A. Yes.

Q. Was Darnell Williams one of the people who robbed you?

A. Yes.

Q. Was Lawrence Grahame one of the people who, also, robbed you?

A. I don't remember.

(N.T. at 70–71).

The Commonwealth thereafter called Alton Parks as a witness.[5] Parks testified that he robbed the Food Lane Market, "but these two [the appellant and his co-defendant] didn't." (N.T. at 77). Parks was directed to tell the court the identities of the other two perpetrators, but he refused.[6] The Commonwealth made a plea of surprise and asked to continue examination of Parks as of cross-examination. The Commonwealth's argument that they were surprised was premised on an oral statement allegedly made by Parks to Detective Mugavero implicating the appellant and Williams. Permission was granted by the court; however, the prosecutor never asked Parks about this statement in the Commonwealth's case-in-chief.

Thereafter, the Commonwealth produced the testimony of Assistant District Attorney Nicholas Englesson, who testified about the conditions at the line-up of March 18, 1981. The Commonwealth then offered Detective Mugavero as a witness. Detective Mugavero testified that he was the investigating officer; that he arrested and interviewed Alton Parks; that he conducted the photographic array which included the photograph of Alton Parks and the photographic array which included the photograph of Darnell Williams. He further testified that he was at Alton Park's Juvenile Proceeding; the Preliminary hearings for Darnell Williams and the appellant; the suppression hearing for Darnell Williams, and the line-up for Lawrence Grahame. On redirect examination, the Detective testified that Ms. Kranich identified the appellant at a preliminary hearing. An objection to the question that led to this answer was sustained, and the jury was instructed to disregard the

5. Parks was tried separately because he was a juvenile at the time of the incident.

6. Parks was held in direct criminal contempt by the court for his refusal to answer.

answer. Once again, the Commonwealth failed to inquire about Park's statement implicating the appellant.

Finally, the Commonwealth offered the testimony of Donald Kowalski, the Food Lane Manager, who testified that approximately one thousand dollars was missing from the store.

Co-defendant, Darnell Williams, testified in his own behalf and offered an alibi as to his whereabouts on the day of the robbery. The appellant, having demurred to the Commonwealth's case offered no evidence in his own behalf.

On rebuttal, the Commonwealth again called Alton Parks as a witness. The prosecutor asked:

"Isn't it a fact that after you were arrested you admitted to Detective Mugavero that you had robbed the market, and not only that, but that Darnell Williams and Mr. Grahame were along with you when you robbed it?" (N.T. at 158).

To which Parks replied, "I don't remember?" The question was posed again and Parks testified that he did not make that statement (N.T. at 160–61).

Reviewing all of the testimony produced by the Commonwealth at trial, we must conclude that the trial court erred in denying appellant's demurrer to all charges. The Commonwealth has proven that a robbery was committed; that it was committed by three black males; and that two of the males were Alton Parks and Darnell Williams. The appellant, alleged by the Commonwealth to be the third black male involved, is connected to the crime by the identification testimony of Pamela Kranich, who later stated that she did not get a good look at the third man; that she did not know who the third man was; and that she did not remember if Lawrence Grahame was one of the robbers. Her testimony is further weakened by her failure to identify Mr. Grahame at a pretrial line-up, and by her statement that "[a]ll blacks look alike."

We are cognizant of the judicial admonitions concerning the province of the jury:

The resolution of conflicts in the testimony presented at trial and the determination of the credibility of the witnesses is solely within the province of the jury. *Commonwealth v. Whack*, 482 Pa. 137, 393 A.2d 417 (1978). A jury is free to believe all or none of the testimony presented at trial. *Commonwealth v. Tate*, 485 Pa. 180, 401 A.2d 353 (1979), and discrepancies in testimony are for the jury to resolve. *Commonwealth v. Martin*, 481 Pa. 515, 393 A.2d 23 (1978).

*Commonwealth v. Webster*, 490 Pa. 322, 327–328, 416 A.2d 491, 493 (1980). So too are we cognizant of the Commonwealth's burden to prove the identity of the perpetrator of a crime:

Proof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is *essential* to a conviction. *Commonwealth v. Reid*, 123 Pa.Super. 459, 187 A 263 (1936). The evidence of identification, however, needn't be positive and certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight. *Commonwealth v. Mason*, 211 Pa.Super. 328, 236 A.2d 548 (1967).

*Commonwealth v. Hickman*, 453 Pa. 427, 430, 309 A.2d 564, 566 (1973). (Emphasis in original). We also reiterate the rule set forth in *Commonwealth v. Kloiber*, 378 Pa. 412, 424–25, 106 A.2d 820, 826, *cert. denied, Kloiber v. Pennsylvania*, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954).

Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony need not be received with caution—indeed the cases say that this positive testimony as to identity may be treated as the statement of fact.

*See also, Commonwealth v. Hickman, supra. Cf. Commonwealth v. Tedder,* 458 Pa. 663, 330 A.2d 841 (1975) (grant of demurrer affirmed by an equally divided court).

Herein, although Ms. Kranich initially identified the appellant, as well as Parks and Williams, her testimony as to the appellant was decidedly uncertain. In comparison her identification of Parks and Williams remained unshaken even on cross-examination. Additionally, we note Ms. Kranich was unable to pick the appellant out of a line-up, whereas she identified photographs of both Williams and Parks in separate photographic arrays. Finally, we note the Commonwealth's abject failure to rehabilitate her testimony with respect to the identification of appellant.

In short, the Commonwealth failed to prove its case against the appellant. Consequently, the judgment of sentence is vacated and the appellant is discharged.

Judgment of sentence vacated.

WICKERSHAM, J., files dissenting opinion.

WICKERSHAM, Judge, dissenting:

I DISSENT!

On June 9, 1981, trial proceedings were held before the Honorable Michael V. Franciosa, Judge of the Court of Common Pleas of Northampton County in a criminal trial involving Lawrence Grahame, Jr., appellant.[1]

One of the principal Commonwealth witnesses was Pamela Kranich. She testified that on December 26, 1980 at about 7:30 p.m. she was working at a supermarket called Food Lane. She was 19 years of age at the time. Early in her direct testimony she advised the court and jury that two persons entered the store, got a cupcake and a pie and came to her register. At that point she said that Darnell Williams pulled a gun on her (N.T. 23). She said that Darnell Williams was the person in the courtroom on trial and she pointed him out as the "gentleman in the white sweater."

1. Grahame was tried with co-defendant Darnell Williams.

234

She testified further that Lawrence Grahame, Jr., appellant herein, was standing next to Darnell and she stated that Grahame was the person present in the courtroom on trial. She pointed him out (N.T. 25). She said that Lawrence Grahame was carrying a gym bag and that he and Williams and a third person by the name of Alton Parks emptied her ' drawer of money and put it in the gym bag that Lawrence Grahame was carrying. They left and she pushed the security alarm and called her boss.

Her identification of the defendant was positive on direct examination. Any subsequent uncertainty in her identification, developed during questioning by defense counsel, was for the jury. I agree with the conclusion of the Northampton County Court *En Banc* on this issue where they stated:

When a case does not involve any suggestive identification proceedings, the Commonwealth's burden is simply to introduce evidence solid enough to avoid conjecture. *Commonwealth v. Crews*, 436 Pa. 346, 260 A.2d 771 (1970). After that, it is up to the jury to find guilt beyond a reasonable doubt, if at all. *Commonwealth v. Hurd*, 268 Pa.Super. 24, 407 A.2d 418 (1979). Thus, in *Commonwealth v. Davis*, 466 Pa. 102, 351 A.2d 642 (1976), the failure of the Commonwealth's witness to identify the accused at a lineup was relevant only to weight and credibility of his subsequent in-court identification.

Under all of the circumstances in the matter before us, we cannot find that the identification was so unreliable that as a matter of law it should not have been accepted by the finder of fact. The witness positively identified the defendant during her direct examination. Although she later grew uncertain during the questioning by defense counsel, her in-court identification was buttressed by the description she gave the investigator. Therefore, the jury had ample evidence to sustain the guilty verdict.

Brief for Appellee at iv.

I would affirm the conviction and judgment of sentence.