J-S80022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RADAMES SANABRIA | : | |
| | : | |
| Appellant | : | No. 2631 EDA 2016 |

Appeal from the Judgment of Sentence March 4, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001110-2011

BEFORE:  BOWES, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 23, 2018**

Appellant, Radames Sanabria, appeals from the judgment of sentence entered following his convictions of first degree murder, carrying a firearm without a license ("VUFA"), and possession of an instrument of crime ("PIC").[1]  We affirm.

The trial court summarized the underlying facts of this case as follows:

> On August 10, 2010, at approximately 10:00 p.m., Jerome Carlyle ("Carlyle"), age fourteen, was hanging out with friends near the intersection of Clearfield Street and Seventh Street in the City of Philadelphia.  [Appellant] and Rafael Roman ("Roman") walked up Clearfield Street, passing the group, and continued to the other side of Seventh Street.  Carlyle and [Appellant] exchanged some words and then Carlyle began to cross the street, following behind [Appellant] and Roman. Seemingly unprovoked, [Appellant] turned toward Carlyle, pulled

---

[1] 18 Pa.C.S. §§ 2502, 6106, and 907.

a gun from his waistband, and began shooting at Carlyle, firing approximately four shots. Carlyle ran a short distance up Seventh Street and then collapsed, while [Appellant] and Roman ran down Seventh Street toward Indiana Avenue. Medics arrived on [the] scene and transported Carlyle to Saint Christopher's Hospital, where he was pronounced dead.

The following day, detectives recovered a video recording from a surveillance camera at a business located at the corner of Seventh Street and Clearfield Street, which had captured the events from the prior evening including the shooting. Over the course of the investigation, Officer Seigafuse became aware that an arrest warrant had been issued for [Appellant] in connection with the August 10, 2010 shooting. On September 14, 2010, Officer Seigafuse was on routine patrol in a marked police vehicle with three other officers when he saw an individual, who he knew to be an acquaintance of [Appellant], exit a vehicle parked at the intersection of Mascher Street and Gurney Street. Officer Seigafuse noticed that there were three other people still inside the vehicle, so the officers made a u-turn on Gurney Street to head back toward the parked vehicle. As they were approaching the vehicle, the rear passenger, later determined to be [Appellant], exited the car and fled down Mascher Street. [Appellant] then doubled back, running several blocks up Mascher Street to Lippincott Street with the officers in pursuit. As Officer Seigafuse caught up to him, [Appellant] was climbing under a parked vehicle. Officer Seigafuse waited for his fellow officers to arrive at the vehicle and then placed [Appellant] into custody.

Trial Court Opinion, 6/27/17, at 3-4. The trial court set forth the subsequent procedural history of this matter as follows:

On October 17, 2012, [Appellant] elected to exercise his right to a jury trial and pleaded not guilty to the above listed charges. On October 23, 2012, the jury found [Appellant] guilty of Murder of the First Degree (H1), Carrying Firearms Without a License (F3), and PIC (M1). At the conclusion of the trial, [the trial c]ourt deferred sentencing to November 1, 2012[,] for the completion of a Pre-Sentence Investigation report, a mental health evaluation, and a drug/alcohol evaluation. On November 1, 2012, sentencing was continued to December 17, 2012[,] because of the developing law with regard to the sentencing of

[a] juvenile and further continued to February 1, 2013[,] in order to review the findings of the Honorable Carolyn Temin on the constitutionality of 18 Pa.C.S. § 1102.1.[1] On February 1, 2013, [the trial c]ourt conducted a sentencing hearing and held the sentence under advisement in order to review all materials, with regard to the law regarding the sentencing of juveniles to life sentences. On February 13, 2013, [the trial c]ourt sentenced [Appellant] to Life without parole on the charge of Murder in the First Degree and did not impose any additional sentence on the remaining charges.

> [1] On December 17, 2012, Judge Temin ruled that the statute was constitutional. *See Commonwealth v. Brooker* (CP-51-CR-0006874-2009), *Commonwealth v. Smith* (CP-51-CR-0006875[-2009]), and *Commonwealth v. Ellison* (CP-51-CR-0006872-2009).

On February 19, 2013, [Appellant] filed a Post-Sentence Motion.[2] On March 6, 2013, [the trial c]ourt granted a hearing for the motion and vacated the sentence pending the outcome of the hearing. The hearing was further continued to May 17, 2013. On May 17, 2013, [the trial c]ourt issued an Opinion finding that 18 Pa.C.S. § 1102.1 was constitutional and that [the trial c]ourt did not err in applying it. The post-sentence motion was further continued numerous times to allow the parties to present additional evidence for [the trial c]ourt's consideration in imposing a sentence.

> [2] On February 25, 2013, the motion was supplemented via the filing of a Motion for Modification of Sentence.

On August 3, 2015, [Appellant] filed a Motion for [the trial c]ourt's recusal, which [the trial c]ourt denied on October 5, 2015. On March 4, 2016, [the trial c]ourt sentenced [Appellant] to a term [of] 39 years to Life on the charge of Murder in the First Degree and did not impose any additional sentence on the remaining charges. Following the imposition of sentence, [Appellant] filed a post-sentence motion, which was denied by operation of law on August 15, 2016.

J-S80022-17

Trial Court Opinion, 6/27/17, at 1-3. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Is the evidence insufficient to sustain the convictions and should judgment of sentence be vacated because identity was not proven and Appellant was, at most, merely present when the murder occurred because Rafael Roman was the shooter?

2. Was the Verdict against the weight of the evidence and should a new trial be ordered because Rafael Roman was identified as the shooter of Decedent and Appellant was at most merely present?

3. Did the prosecutor engage in prosecutorial misconduct and cause irreparable harm to Appellant by ignoring the trial court's Order by implying that Appellant had been involved in discouraging Eliezer Hernandez from testifying truthfully at trial?

Appellant's Brief at 4 (renumbered for ease of disposition).

Appellant first purports to argue that there was insufficient evidence to support the verdicts in this case. Appellant's Brief at 11-14. However, Appellant alleges that the evidence as to his identity as the person who brandished the firearm and committed the murder was not sufficient. Specifically, Appellant contends that the testimony provided by eyewitnesses Cory Jones and Danny Rivera identified Rafael Roman as the person who perpetrated the shooting and failed to prove that Appellant was the perpetrator of the murder. *Id*. at 13. Appellant further alleges that, at trial, Eliezer Hernandez and Luis Ortiz recanted their identifications of Appellant. *Id*. In addition, Appellant states the following:

- 4 -

> There is insufficient evidence to sustain the first-degree Murder, VUFA, and [PIC] convictions. The real shooter was Rafael Roman and all identifications of Appellant were recanted or contrary to other identifications of Roman as the shooter of Decedent. Therefore, Appellant prays that his convictions be vacated because there is insufficient evidence to sustain those convictions.

Appellant's Brief at 13-14. Thus, Appellant challenges whether the Commonwealth established that Appellant was the person who shot the victim in this matter. Again, Appellant contends that the evidence was indefinite as to the identity of Appellant being the perpetrator. Basically, Appellant asks us to reassess the credibility of the Commonwealth's witnesses.

A sufficiency of the evidence review, however, does not include an assessment of the credibility of the testimony. *Commonwealth v. Wilson*, 825 A.2d 710, 713-714 (Pa. Super. 2003). Such a claim is more properly characterized as a weight of the evidence challenge. *Id*. A challenge to the weight of the evidence questions which evidence is to be believed. *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006). Indeed, claims challenging the weight of the evidence and sufficiency of the evidence are clearly distinct. *See Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000) (discussing the distinctions between a claim challenging the sufficiency of the evidence and a claim that the verdict is against the weight of the evidence). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence

is to be believed." ***Commonwealth v. Charlton***, 902 A.2d 554, 561 (Pa. Super. 2006) (quoting ***Commonwealth v. Galindes***, 786 A.2d 1004, 1013 (Pa. Super. 2001)).

In ***Commonwealth v. Grahame***, 482 A.2d 255 (Pa. Super. 1984), we made the following observation regarding challenges to the identity of the perpetrator of a crime being an attack on the weight of the evidence:

> Proof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is *essential* to a conviction. ***Commonwealth v. Reid***, 123 Pa. Super. 459, 187 A 263 (1936). The evidence of identification, however, needn't be positive and certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight. ***Commonwealth v. Mason***, 211 Pa. Super. 328, 236 A.2d 548 (1967).

> ***Commonwealth v. Hickman***, 453 Pa. 427, 430, 309 A.2d 564, 566 (1973). (Emphasis in original).

***Grahame***, 482 A.2d at 259. Accordingly, we view this issue, as presented, to be a challenge to the weight of the evidence offered by the Commonwealth, and we will address it as such and assess the merits of the claim in reviewing Appellant's second issue.[2]

_____

[2] To the extent Appellant attempts to present a typical challenge to the sufficiency of the evidence, we note that the trial court addressed Appellant's challenge to the sufficiency of the evidence by offering a thorough review of the evidence presented at trial reflecting that Appellant was the perpetrator of the shooting, and we conclude that such a sufficiency claim lacks merit on the basis of the trial court's discussion. Trial Court Opinion, 6/27/17, at 5-10.

Appellant next argues that the verdict was against the weight of the evidence because he was merely present at the scene of the crime. Appellant's Brief at 8-11. Specifically, Appellant contends that "[t]he evidence [presented at trial] points to Rafael Roman only as the killer of Decedent." *Id*. at 11.

In **Commonwealth v. Clay**, 64 A.3d 1049 (Pa. 2013), our Supreme Court set forth the following standards to be employed in addressing challenges to the weight of the evidence:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751-[7]52 (2000); **Commonwealth v. Brown**, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 560 A.2d at 319-[3]20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id**. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown**, 538 Pa. at 435, 648 A.2d at 1189.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
> > Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see

the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. ***Commonwealth v. Farquharson***, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Widmer***, 560 Pa. at 321-[3]22, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Widmer***, 560 A.2d at 322, 744 A.2d at 753 (quoting ***Coker v. S.M. Flickinger Co.***, 533 Pa. 441, 447, 625 A.2d 1181, 1184-[11]85 (1993)).

***Clay***, 64 A.3d at 1054-1055. "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 879-880 (Pa. 2008).

The trial court addressed this issue as follows:

      On appeal, [Appellant] claims that the verdict was against the weight of the evidence, averring that Rafael Roman was identified as the shooter and that [Appellant was] merely present. This [c]ourt disagrees. As discussed at length above,[3] the jury heard testimony from numerous witnesses and was able to assess each of their credibility as a witness. In assessing the eye-witness' testimony and identifications of the shooter, the jury had the full opportunity to evaluate each witness at trial in making the relevant factual determinations. Similarly, the jury heard testimony regarding the ballistics evidence - four fired cartridge casings all from the same firearm recovered in close proximity - and was able to evaluate the consistencies between such evidence and the witness testimony regarding the location of the shooter. Moreover, the jury was able to assess the implications of the officer testimony regarding [Appellant] fleeing from police approximately one month after the shooting. The jury verdict, reflecting the assessment of all of the evidence presented at trial, was not so contrary to the evidence presented at trial as to "shock one's sense of justice." Therefore, this [c]ourt finds no merit in [Appellant's] challenge to the weight of the evidence presented at trial.

Trial Court Opinion, 6/27/17, at 11-12.

Based upon our complete review of the record, we are compelled to agree with the trial court. Here, the jury, sitting as the finder of fact, was free to believe all, part, or none of the evidence against Appellant. The jury weighed the evidence and concluded Appellant perpetrated the crimes in question. We agree that this determination is not so contrary to the evidence as to shock one's sense of justice. We decline Appellant's

_____

[3] Again, we observe that the trial court addressed Appellant's challenge to the sufficiency of the evidence by presenting a thorough review of the evidence set forth at trial, which reflected that Appellant was the perpetrator of the shooting. Trial Court Opinion, 6/27/17, at 5-10.

invitation to assume the role of fact-finder and to reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to grant relief on Appellant's challenge to the weight of the evidence.

Appellant last argues that the Commonwealth engaged in prosecutorial misconduct at the time of closing arguments. Appellant's Brief at 14-16. Specifically, Appellant claims that the prosecutor, in violation of the trial court's order, made improper and prejudicial statements during closing arguments implying that Appellant was somehow involved in discouraging Eliezer Hernandez from testifying at trial. *Id*. at 15.

"Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion." *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa. Super. 2005). "It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted." *Commonwealth v. Baez*, 720 A.2d 711, 729 (PA. 1998).

> It is well established that trial judges must be given an opportunity to correct errors at the time they are made. "[A] party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." Even where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver.

*Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008) (citations omitted). *See Commonwealth v. Jones*, 460 A.2d 739 (Pa. 1983)

- 10 -

(holding that issue of prosecutorial misconduct was waived on appeal where defense counsel immediately objected to prosecutor's conduct, but made no request for mistrial or curative instructions); *Commonwealth v. Chimenti*, 524 A.2d 913 (Pa. Super. 1987) (ruling that, although defense counsel did object, he failed to request a mistrial or curative instruction, and, consequently, the issue was not preserved for review).

Moreover, when a party moves for a mistrial, such relief is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. *Commonwealth v. Feliciano*, 884 A.2d 901, 903 (Pa. Super. 2005). The decision whether to grant a new trial due to alleged prosecutorial misconduct rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Commonwealth v. Rios*, 721 A.2d 1049, 1054 (Pa. 1998). Comments by a prosecutor do not constitute reversible error unless the language was such that its unavoidable effect was to prejudice the jury, forming in their minds fixed bias or hostility towards the defendant, so that they could not weigh the evidence objectively and render a true verdict. *Id*. In addition, during closing arguments, prosecutors are permitted to comment in fair response to references made by defense counsel in their closing statements. *See Commonwealth v. Williams*, 650 A.2d 420, 428 n.13 (Pa. 1994) (stating that prosecutor's reference during closing argument

to absence of witnesses was permissible as proper response to defense counsel's remarks pertaining to the absence of the witnesses).

Our review of the record reflects the prosecutor made the following comments during closing argument regarding the testimony offered by Luis Ortiz, which was interrupted by an objection from defense counsel:

> [ASSISTANT DISTRICT ATTORNEY]: Counsel was talking about inconsistencies and I haven't heard any in his testimony, but when it comes to any differences in testimony or pointing the finger at someone, there is no argument. There were no issues, no, no fighting between Luis Ortiz and [Appellant], this defendant [Appellant]. No fighting, no issues. What motive would he have to point the finger at this gentleman who he barely knows, he's never had a conversation with, as the shooter except for the fact that he saw it with his own eyes? There's no motive to do it except for that's the truth and he was providing that observation and wanted to assist the police. Counsel wants you to believe that he pointed the finger at [Appellant] because he was threatened and he knew somebody else got beaten up. Well, the result of somebody else getting beaten up was Eli Hernandez coming in here and saying or coming into the detectives and in here and saying I never saw anything. He had a fear about getting involved as a reaction, even though he did admit, I told people in the neighborhood that it was [Appellant].
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: You may continue.
>
> [ASSISTANT DISTRICT ATTORNEY]: He stated, did you tell people it was [Appellant]? It was read into the record. But he backtracked from the very beginning. That was based on his personal experience or his fear of getting beaten up or his, but it did not affect Luis Ortiz and there's not enough time for that knowledge to have any effect on his statement when we know that he was already brought to the detective division, sat down and started giving a statement an hour and a half after this, after this incident occurred. There's no connection. There's no [sic] even knowledge that Luis Ortiz knew what happened or the extent of what happened to Eli or his brother to affect his, his

- 12 -

statement, his identification, and it clearly did not affect his testimony from what you observed, his demeanor, his ability to respond to the questions when he testified as part of this trial.

N.T., 10/22/12, at 80-82.

Thus, the record indicates that, although Appellant objected to the comment in a timely manner, Appellant did not request a mistrial or curative instructions from the trial court. Accordingly, Appellant's issue of prosecutorial misconduct is waived on appeal. *Strunk*, 953 A.2d at 579

Moreover, even if not waived, we would adopt the following discussion of the trial court and conclude that Appellant's claim lacks merit:

> Upon review of the evidence presented at trial, [the trial c]ourt has determined that the prosecutor's remarks did not constitute misconduct. The remarks were made in fair response to the defense's closing argument as to how the beating suffered by Eliezer Hernandez influenced the statement of Luis Ortiz and the testimony presented at trial. Specifically, the defense's argument to the jury was as follows:
>
> > But probably most telling about Luis Ortiz was Eliezer Hernandez. You remember the young man who came in here and he told you, he said in his statement the police asked him, they said did you see who did this? No. Did you tell people you saw who did this? Yeah, I told a couple people I saw who did this but I really didn't. And then he tells you that they were arguing with Luis Ortiz, they being the relatives of Jerome Carlyle, and I went over there to tell them that Luis Ortiz was not involved and he got beaten, stomped, he and his brother put in the hospital. You remember what he told you. I thought I was going to die.
> >
> > Now, is that the motivation for Luis Ortiz going down to the police station and saying, oh, yeah, yeah, I saw this, I'm not going back there and have those people exact their revenge on me? I am not

criticizing what happened. I can imagine the rage that those family members must have felt. It's not justifiable but it is explainable. But what they did, they manipulated the evidence. It took Eliezer Hernandez to come in here and say, yeah, they beat me up but I didn't see anything and so I couldn't help them. For Luis Ortiz, I'm not going to be on the receiving end of whatever is out there.[28]

[28] N.T. 10/22/2012 at 60-61.

The prosecutor's closing remarks were properly made to rebut the defense's assertion that Hernandez's beating was what prompted Ortiz to provide his statement and his testimony. The prosecutor presented the jury with the Commonwealth's alternate assessment that Hernandez's beating only explained his own demeanor in testifying and that the beating could not have influenced Ortiz's statement or his testimony at trial. As such, [the trial c]ourt found that the prosecutor's remarks were not a deliberate attempt to destroy the jury's objectivity, but rather a proper, alternate assessment of what the evidence demonstrated at trial. Accordingly, the prosecutor committed no reversible error and [Appellant's] claim must fail.

Trial Court Opinion, 6/27/17, at 14-15.

In conclusion, Appellant has presented no issues warranting relief.

Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/18

- 14 -