J-S23003-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LAMAR PERSON, | : | |
| | : | |
| Appellant | : | No. 2059 EDA 2013 |

Appeal from the Judgment of Sentence April 5, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0004862-2012

BEFORE:  DONOHUE, SHOGAN and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:　　　　　　　**FILED MAY 14, 2015**

Lamar Person ("Person") appeals from the judgment of sentence entered on April 5, 2013 by the Court of Common Pleas of Philadelphia County, Criminal Division, following his convictions of robbery, conspiracy, and recklessly endangering another person ("REAP").[1]  We affirm.

The trial court summarized the relevant facts of this case as follows:

> The incident giving rise to the charges in this case occurred on February 12, 2012, at a delicatessen located at 816 North 12th Street in the City of Philadelphia (12th Street Deli) involving the victim, Michael White (White).  On that day at or around 8:45 p.m., White was walking down 12th Street when he noticed a gold Nissan Maxima slowing down with four men in it.  White became suspicious that something was wrong because the car was slowing down and the men were staring at him.  Upon which, White went into the 12th Street Deli, thinking that he would be safe therein.  However, two men from the

---

[1]  18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903, 2705.

*Retired Senior Judge assigned to the Superior Court.

Nissan followed him into the 12th Street Deli, [Person] and his co-conspirator, Ronald Flamer (Flamer). Flamer walked in first and asked White what time it was. White turned his head and saw [Person] enter the Deli. Whereupon, Flamer told White to empty his pockets. Flamer proceeded to go through White's pockets and found a five dollar bill; a pack of Newport cigarettes; and a cell phone. Flamer took these items from White. However, the co-conspirators wanted more valuables to take. Thereupon, Flamer told [Person] to pull out his ratchet, meaning a "gun." White believed that he saw [Person] pull out a gun from his pocket. But that was all that White had so the co-conspirators left the 12th Street Deli and got back into the Nissan and drove away. White went immediately home. When he got home, White's mother called the police.

When the police arrived, White told Philadelphia Police Officer Joseph Gillespie (Officer Gillespie) what had happened. Officer Gillespie put out a police flash with descriptions looking for the suspects. At about that time[,] the co-conspirators were stopped for a traffic violation by Philadelphia Police Officer Robert Wuuller (Officer Wuuller) at Broad and Dauphin Streets because of no passenger side mirror. Officer Wuuller then got the police flash from headquarters about the gold Nissan Maxima[,] which matched the description of [Person] and Flamer. Officer Gillespie brought White to the car stop of [Person] and Flamer at Broad and Dauphin Streets. At the scene, White identified [Person] and Flamer as the perpetrators of the Robbery.

Trial Court Opinion, 11/25/13, at 2-3.

On January 18, 2013, a jury found Person guilty of robbery (F1), conspiracy (F1), and REAP. On April 5, 2013, this trial court sentenced Person to consecutive sentences of five to ten years of incarceration on the robbery charge; five to ten years of incarceration on the conspiracy charge;

and no further penalty on the REAP charge, for an aggregate sentence of ten to twenty years of incarceration.

On April 11, 2013, Person filed a post-sentence motion alleging prosecutorial misconduct and that the verdict was against the weight of the evidence, which the trial court denied on July 18, 2013. On July 22, 2013, Person filed a timely notice of appeal.

On appeal, Person raises the following issues for our review and determination:

> 1. During the Commonwealth's closing argument, the prosecutor explicitly asked the jurors to put themselves in the shoes of the victim and principal witness Michael White.
>
> 2. The trial court erred when it failed or refused to charge the jury on the lesser included offenses or concluded that it did not have the authority to or refused to find [Person] guilty of any lesser included offense.
>
> 3. Whether the verdict was based on insufficient evidence?
>
> 4. The verdict regarding F-1 robbery was against the weight of the evidence.

Person's Brief at 11.[2]

For his first issue on appeal, Person argues that the trial court erred in not granting him a new trial due to prosecutorial misconduct that allegedly took place during closing arguments. Person's Brief 15-24. Specifically,

---

[2] We reordered the issues Person raises on appeal for ease of review.

Person takes issue with the following portion of the prosecution's closing argument:

> You can give [White] justice with one word. Guilty. I'm asking you to go to this room and I'm asking you to imagine how this kid felt inside that deli with nobody but the clerk behind that window who was of no help and two guys covering him and one guy holding a gun while the other one was doing this to him. I want you to think about this when you go to this room to deliberate. And when you come back it will be your turn to speak the truth and I'll ask you to find both of these defendant[s] guilty of gunpoint robbery of this kid [White]. Thank you.

N.T., 1/17/13, at 161. Person contends that by asking the jury to place themselves into the shoes of the victim, the prosecution wrongly attempted to influence the jury by arousing their prejudices. Person's Brief at 15.

We conclude that Person has waived this claim for failing to make a timely objection to the prosecutor's remarks.

> This Court has held that the lack of a contemporaneous objection constitutes a waiver of any challenge to the prosecutor's closing remarks. ***Commonwealth v. Powell***, [] 956 A.2d 406, 423 ([Pa.] 2008) (providing that the "absence of a contemporaneous objection below constitutes a waiver of appellant's current claim respecting the prosecutor's closing argument"); ***Commonwealth v. Butts***, [] 434 A.2d 1216, 1219 ([Pa.] 1981) (providing that the failure to object during or after summation constitutes a waiver of prosecutorial misconduct claim).

***Commonwealth v. Rivera***, [] 983 A.2d 1211, 1229 ([Pa.] 2009) (citation omitted). Here, Person did not object to the above-referenced remarks at

trial and did not raise the issue until his post-sentence motion. **See** N.T., 1/17/13, at 161; Post-Sentence Motion, 4/11/13, at 4-7. Accordingly, Person has waived this issue.

For his second issue on appeal, Person argues that the trial court erred in denying his request to charge the jury on robbery graded as a second- and third-degree felony. Person's Brief at 25-30. The record reveals that Person did not object to the trial court's failure to include this point at the time it charged the jury. N.T., 1/17/13, at 112-13, 183-84. Accordingly, Person has waived the issue. **See Commonwealth v. Sanchez**, 82 A.3d 943, 978 (Pa. 2013) (holding that even where trial court denies request for specific charge at charging conference, party must make a specific objection to its omission when charge is given to preserve the issue for appeal).

Even if Person had not waived this issue, it would not prevail.[3] Person argues that he was entitled to a charge on robbery as a second- and third-degree felony because they are lesser-included offenses of first-degree felony robbery for which the record contained evidentiary support. Person's Brief at 25-28.[4] This argument is premised on Person's assertion that

---

[3] "In deciding whether a trial court erred in refusing to give a jury instruction, we must determine whether the court abused its discretion or committed an error of law." **Commonwealth v. Clouser**, 998 A.2d 656, 658 (Pa. Super. 2010).

[4] We note that the relevant distinction here is that first-degree felony robbery requires a finding that the actor threaten or instill the fear of serious bodily injury, second-degree felony robbery requires only the intent to cause or instill fear of bodily injury, and third-degree felony robbery occurs where

because White did not positively identify the object in Person's hand as a gun, the jury could reasonably conclude that they did not possess a gun and therefore did not threaten or intend to put White in fear of serious bodily harm, as is required for a conviction of robbery as a first-degree felony. *See id.* We rejected precisely the same argument in *Commonwealth v. Thomas*, 546 A.2d 116 (Pa. Super. 1988). In that case, the defendant robbed a fast food restaurant. In the course of doing so, he held a pointed object under his shirt. As the defendant was collecting money from the registers, it was revealed that the object under his shirt was a door lock. He was convicted of robbery graded as a first-degree felony. In a PCRA petition, the defendant argued that his trial counsel was ineffective for failing to request a charge to the jury on robbery as a second-degree felony because it is a lesser-included offense. After considering the definitions of these crimes, we agreed with the defendant that second-degree robbery is a lesser-included offense of first-degree robbery, but we rejected his claim that this alone entitled him to a charge on the offense:

> However, [the defendant] is not automatically entitled to have the jury instructed on second[-]degree robbery simply because that charge constitutes a lesser included offense of the first degree robbery charge. A defendant is entitled to such an instruction only where the evidence in the record would permit the jury to find, rationally, the

---

the defendant "physically takes or removes property from the person of another by force however slight." *See* 18 Pa.C.S.A. § 3701(a)(1)(ii), (iv), (v).

- 6 -

defendant guilty of the lesser included offense but not the greater offense. *Commonwealth v. Wood*, 475 A.2d 834 ([Pa. Super.] 1984); *Commonwealth v. Sirianni*, 428 A.2d [629,] 633 [(Pa. Super. 1981)].

[The defendant] asserts that he was entitled to such an instruction because the evidence supported a finding that appellant threatened the McDonald's employees with "immediate bodily injury" but not with "immediate serious bodily injury." According to [the defendant], since [he] carried only a lock, which cannot cause serious bodily injury, the victims were never placed in fear of serious bodily injury. … .

[The defendant's] focus on the true nature of the hidden object and on the state of mind of the victims is misplaced. Rather, the proper focus under the statute in determining the type of bodily harm threatened is on the defendant's intent and actions. *Commonwealth v. Morton*, 512 A.2d 1273 ([Pa. Super.] 1986); *Commonwealth v. Mays*, 375 A.2d 116 ([Pa. Super.] 1977). In simulating the possession of a gun, [the defendant] was clearly aiming to instill in his victims the highest degree of fear. Faced with a deadly weapon, a victim fears, not just that he or she may be injured during the robbery, but that his or her very life is in danger. [The defendant] did not simply intend that the victims' fear of some bodily injury would prevent resistance; rather, he relied on the threat of a deadly weapon to insure compliance.

[The defendant's] crime is not made less serious by the fact that he did not possess a gun, but was only simulating one. *Commonwealth v. Hurd*, [] 407 A.2d 418, 420 ([Pa. Super.] 1979) (defendant placing hand in pocket and pointing at victim shows that defendant intended to put victim in fear of serious bodily harm). Neither is the harm intended reduced to mere bodily harm simply because the victims realized before [the defendant] escaped (but after [he] began taking the money), that [he] did

not possess a gun. The proper question is whether the threat intended or posed by [the defendant] was calculated to inflict fear of serious bodily injury. ***Commonwealth v. Mays***, [] 375 A.2d at 118. The threat posed by the appearance of a gun is calculated to inflict fear of deadly, not just mere bodily, injury. This threat enabled [the defendant] to proceed with the theft. … Moreover, the statute instructs that in determining the grade of the felony we focus on the intent or act of the defendant and not the subjective state of mind of the victim. [The defendant] would not have been exonerated of the first[-]degree felony even if his victims refused to take his threat seriously. ***Hurd***, 407 A.2d at 420; ***Mays***, 375 A.2d at 118.

The statute itself, by dividing the degrees of robbery into gradations of possible violence, demands that the jury make a decision as to the degree of violence that the defendant intended or used in the commission of the crime. In distinguishing between bodily injury and serious bodily injury, the legislature recognized that the amount of force used or threatened on a person during a robbery deserved separate treatment and penalty, with the punishment proportionate to the amount of violence threatened or used. ***Commonwealth v. Brown***, [] 484 A.2d 738, 741 ([Pa.] 1984). It would be both irrational and contrary to the aims of the statute for the jury to be permitted to find [the defendant], who calculated that his victims would be in mortal fear of a deadly weapon, guilty only of the lesser offense of threatening mere bodily injury, but not guilty of threatening serious bodily injury. [The defendant] was therefore not entitled to have the jury instructed on the charge of second[-]degree robbery. ***See*** [] ***Sirianni***, [] 428 A.2d at 633 (where firearm involved, it would not have been reasonable for the jury to infer the intent to cause mere bodily injury from the fact that no serious bodily injury was caused; defendant not entitled to jury instruction on lesser included offense of simple assault).

- 8 -

> Instructions should invite the jury to arrive at a rational, not an irrational, conclusion.

***Thomas***, 546 A.2d at 118-19.

Similar to the situation in ***Thomas***, Person's argument for the second- and third-degree robbery instruction was premised on his assertion that the evidence would allow a finding that he did not actually possess a gun. However, as recounted above, whether he actually possessed a gun is not the salient inquiry; we focus, instead, on whether the actor intended to instill fear of serious bodily injury. Even if Person and Flamer did not possess a gun, it is undisputed that they simulated possession of a gun. Thus, as in ***Thomas***, we conclude that the "threat intended or posed by [Person] was calculated to inflict fear of serious bodily injury," and the jury could not have rationally concluded otherwise. Accordingly, we find no error in the trial court's refusal to give the requested charge.

For his third issue on appeal, Person challenges the sufficiency of the evidence for his robbery as a first-degree felony conviction.[5] Person's Brief at 33-35. When reviewing sufficiency of the evidence claims, "we must

---

[5] We note that although the statement of the questions involved section of Person's appellate brief and the heading to this issue in the argument section of his brief claim that his entire verdict was based on insufficient evidence, Person presents argument only as to his robbery conviction. ***See*** Person's Brief at 11, 33-35. Therefore, Person has waived any challenge to his other convictions with respect to the sufficiency of the evidence. ***See Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013) (quoting *Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011)). When performing this review, "we may not reweigh the evidence or substitute our own judgment for that of the fact finder." *Id.*

Person argues that the evidence was insufficient to support his conviction of robbery as a first-degree felony. Section 3701(a) defines robbery as follows:

> **(a) Offense defined.**--
>
> (1) A person is guilty of robbery if, in the course of committing a theft, he:
>
>> (i) inflicts serious bodily injury upon another;
>>
>> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
>>
>> (iii) commits or threatens immediately to commit any felony of the first or second degree;
>>
>> (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;
>>
>> (v) physically takes or removes property from the person of another by force however slight; or

(vi) takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

***

(b) Grading.--

(1) Except as provided under paragraph (2), robbery under subsection (a)(1)(iv) and (vi) is a felony of the second degree; robbery under subsection (a)(1)(v) is a felony of the third degree; otherwise, it is a felony of the first degree.

18 Pa.C.S.A. § 3701(a)(1),(b).

Person was convicted under subsection (a)(1)(ii), which requires that in the course of committing the theft, the actor "threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]" 18 Pa.C.S.A. § 3701(a)(1)(ii).[6] Presently, Person argues that the evidence was insufficient to support a finding that Person and/or Flamer possessed a gun and therefore threatened, or intentionally placed White in fear of, immediate bodily injury. *See* Person's Brief at 35. Person argues essentially that because White could not state unequivocally that Person

---

[6] "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

possessed a gun, the evidence was insufficient to establish commission of robbery under section 3701(a)(1)(ii). ***See id.*** We disagree.

The evidence, viewed in the light most favorable to the Commonwealth, establishes that Person and Flamer surrounded White while he was sitting down. N.T., 1/16/13, at 50. They stood so close to White that he could not stand up or move. ***Id.*** Flamer demanded that White empty his pockets. ***Id.*** at 51. White responded that he did not have anything and held out the five dollars that he had on his person. ***Id.*** at 52. Flamer then went through the pockets on White's coat and pants and discovered only a cellular phone and a partial pack of Newport 100 cigarettes. ***Id.*** In an aggravated tone of voice, Flamer then told Person to "pull out the ratchet." ***Id.*** at 53. White understood "ratchet" to mean gun. ***Id.*** at 54. At that time, Person pulled out something that he had concealed on his hip, but kept it close against his waist. ***Id.*** at 53, 55. White glanced at the object and saw what looked like the barrel of a gun.[7] ***Id.*** at 56. With the object exposed, Flamer asked the victim if he had anything else. White responded in the negative, and Flamer went through his pockets once more before leaving the store with Person, as well as with White's phone, cigarettes and money. ***Id.*** at 57. White testified that he was nervous

---

[7] White testified that he did not keep looking at the object, opting instead to "look in their eyes to kind of go with their body language to see what was going to happen next." N.T., 1/16/13, at 56.

during the encounter because "he wasn't sure what was going to happen." *Id.* at 68.

This evidence establishes that Person and Flamer physically restricted White and brandished a gun while demanding that White give them his possessions. We conclude that in this case, the displaying of a gun while issuing demands is sufficient to establish that Person threatened or intentionally placed the victim in fear of immediate serious bodily injury. *See* 18 Pa.C.S.A. § 3701(a)(1)(ii).

For his final issue on appeal, Person argues that his verdict with respect to his robbery as a first-degree felony conviction was against the weight of the evidence. Person's Brief at 31-32. Our standard of review when presented with a weight of the evidence claim is different from that applied by a trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 758 (Pa. Super. 2014). Therefore, "an appellate court reviews the exercise of the trial court's

discretion; it does not answer for itself whether the verdict was against the weight of the evidence." **Commonwealth v. Houser**, 18 A.3d 1128, 1135-36 (Pa. 2011). Importantly, "a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice." **Id.**

We conclude that the trial court did not abuse its discretion in determining that Person's robbery verdict was not against the weight of the evidence. In arguing to the contrary, Person places much emphasis on the fact that White, who was the Commonwealth's primary witness, was previously convicted of a crime of dishonesty and therefore, in Person's view, not a reliable witness. Person's Brief at 31. Credibility determinations are for the jury to make "and review of the jury's credibility determinations is not for the trial court to undertake." **Commonwealth v. Gonzalez**, 109 A.3d 711, 724 (Pa. Super. 2015). Here, the jury weighed the evidence presented, evaluated White's testimony, and evidently found him credible, as it was entitled to do.

Moreover, as we established above, the certified record reflects that Person and Flamer physically restricted White and that White believed Flamer told Person to get out a gun while demanding that White give them his possessions. **See** N.T., 1/16/13, at 50-53, 55-57. The trial court did not abuse its discretion in determining that the jury verdict here was not so

contrary to the evidence that it shocks one's sense of justice. Accordingly, Person's weight of the evidence claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/2015