# Commonwealth *v.* Daynarowicz, Appellant.

*Criminal law—Murder—Charge—Degree—Question for jury—Appeals.*

1. Where all the elements of murder of the first degree are shown, although the jury could have found a less degree, it is not the duty of the appellate court on an appeal from a conviction of the higher offense, to resolve itself into a trier of the facts; that obligation is on the jury.

*Criminal law—Murder—Premeditation—Intention—Time.*

2. An intent to kill distinctly formed, even for a moment, is sufficient to support a conviction of murder of the first degree; it may be inferred from words and acts and the nature of the weapon used.

3. The deliberation and premeditation required is not upon the intent but upon the killing.

Argued April 10, 1922. Appeal, No. 393, Jan. T., 1922, by defendant, from judgment of O. & T. Schuylkill Co., Sept. T., 1921, No. 1921, on verdict of guilty of murder of the first degree, in case of Com. v. Stiney Daynarowicz. Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART and SCHAFFER, JJ. Affirmed.

Indictment for murder. Before BERGER, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree upon which sentence was passed. Defendant appealed.

*Errors assigned,* inter alia, were various instructions recited in the opinion of the Supreme Court, quoting them.

*M. M. Burke,* with him *Henry Houck,* for appellant, cited as to the charge: Com. v. Frucci, 216 Pa. 84; Com. v. Ferko, 269 Pa. 39; Com. v. Greene, 227 Pa. 86; Com. v. Chapler, 228 Pa. 630; Com. v. Fisher, 221 Pa. 538; Com. v. Gerade, 145 Pa. 289; Com. v. Deitrick, 221 Pa. 7.

*Edw. J. Maginnis,* Assistant District Attorney, with him *Roy P. Hicks,* ex-Assistant District Attorney, *Cyrus M. Palmer,* District Attorney, for appellee, cited: Com. v. Sheets, 197 Pa. 69; Shaffner v. Com., 72 Pa. 60; Mc-Meen v. Com. 114 Pa. 300.

OPINION BY MR. JUSTICE KEPHART, June 24, 1922:

The record presents all the elements necessary to sustain a conviction of murder of the first degree. It will be unnecessary to give detailed review of the circumstances in connection with the crime, as the assignments complain only of the charge of the court. Whether the law's judgment should be concluded on a first degree verdict was a matter entirely for the jury; it could have found a less degree. When all the elements of the higher offense are present, it is not the duty of this court to resolve itself into a trier of facts, determining the degree best suited to the facts proven; this obligation has been wisely placed on the jury, and it, of course, accepts full responsibility. We may, as judges, disagree with the conclusion; but the jury, whose power and duty it is to decide the facts, has spoken through the verdict, and it is the final arbiter as to the weight and conclusiveness of the evidence. Its determination seals the question unless trial errors are present.

Briefly: About an hour and a half before the shooting that resulted in death, the defendant, a saloonkeeper,

stated to his housekeeper that the deceased, a boarder, had stolen some money placed beside the cash register in the bar that morning, but the housekeeper explained to him that this was not true, as his son had placed the money in the register.

The deceased came downstairs later, and, on being advised by the housekeeper that defendant charged him with the theft of the money, a few moments thereafter entered the barroom. There he was again charged with the theft, which he denied. Defendant then picked up a gun from the bar and fired at deceased, killing him. The only witness was the housekeeper, who followed deceased into the barroom and stood at a door leading from the dining room. She testified: "A. And then Stiney said, 'I will kill you for my money.' Daynarowicz took the gun and fired at Konopko, and Konopko fell down exclaiming, 'Oh, Jesus; Oh, Jesus.' Q. Is that all that was said between the two men? A. No. Q. Did I understand that she says that is all that was said between them? A. Yes.....A. He took the gun and when they were talking about that money, but when Konopko went into the barroom and I went right after him, then Stiney had no gun in his hand. Q. Where did the defendant take the gun from; that is, where did he get it? A. The gun was standing pretty close to the register behind the bar. Q. On the back bar? A. It was on the counter, by the looking glass." While there were no prior threats shown, or acts indicating prior malice, and everything in connection with the offense took place within the brief space of time mentioned, the evidence shows the use of a deadly weapon on a vital part of the body, with admissions made shortly thereafter showing complete understanding of what had taken place, with its seriousness.

The court submitted to the jury, through clear instructions, the law relating to the various degrees of homicide, advising them of their power to find any degree; explaining fully the law with respect to crimes committed through passion, anger or in a state of frenzy.

The jury found defendant had sufficient time to formulate an intention to commit a premeditated homicide in the time that elapsed from the moment deceased entered the room, walked to the bar counter, and was shot,—not many minutes, it is true, but time enough; it was sufficient to fully enable defendant to frame in his mind an intent to kill, and select the instrument, lying close by, —in short, to deliberately premeditate a murder. We must bear in mind what this court has often said,—no time is too short for a wicked man, or a man with an utter disregard for human life or our law, to frame in his mind his scheme of murder and draft the means to accomplish it; remembering at the same time that "suddenness is opposed to premeditation," and crimes done suddenly are usually the result of passion or anger. The intent to kill distinctly formed, even for a moment, is sufficient. It may be inferred from words and acts and the nature of the weapon used. The State submits, so far as it is able, the evidence connected with the offense. It is from this evidence the jury determines the intention of the defendant at the time the act is committed. In reaching this conclusion, it must consider all that took place immediately before and connected with the circumstances that resulted in the killing, for it must be remembered that a person in his right mind is supposed to understand and know what he is doing and the consequences of his act. The deliberation and premeditation required is not upon the intent but upon the killing: Com. v. Reed, 234 Pa. 573, 577; Com. v. Dreher, 274 Pa. 325.

The assignments need not be considered specifically. The fifth complains of the charge: "No man has a right to shoot another person deliberately because he has taken money, and if he deliberately aimed that gun at that man and fired it at a vital part, intending to take his life, he is responsible, and it would be your duty to say so by a first degree verdict." This would be serious if it stood alone; but, when read in connection with all

that was said, it is quite evident the court did not intend to direct a verdict of murder of first degree. After hearing the charge, the minds of the jury must have been left with the impression it was their duty to take into consideration all the circumstances attending the death, and, if they found certain ingredients existing, they would be warranted in returning the highest degree, but that it was always within their power to determine the degree.

The court affirmed defendant's eighth point in language as broad as could be permitted. It was contended by defendant that Konopko, the deceased, tried to wrench the gun from him, and the death was accidental. The point asked the jury, if they found this evidence to be true, to return a verdict of not guilty. The court modified it by instructing them that, while Konopko might have endeavored to wrench the gun from defendant, if the latter had an intent to, and did, in the struggle, partly cause its discharge, defendant could not be relieved of responsibility; this, in effect, was what the instruction said. It reads: "We will say this, that if, while the defendant held his gun in a threatening attitude toward Konopko, Konopko seized the gun and tried to wrench the gun from the defendant, and in so doing, entirely through the action of Konopko, without any intent on the part of the defendant that the gun should be discharged, the gun was discharged, and shot and killed Konopko, then you will be justified in determining that it was accidental; in fact, it would be your duty to determine that it was accidental if the gun was discharged entirely through the act of the man who was shot."

The court further instructed the jury, "if under all the evidence and under the instructions we shall give you, you would be conscientiously led to the conclusion that your verdict should be one of first degree, you must not be deterred from doing justice by the probable consequence of your verdict, because, in the discharge of your duty, you have no more responsibility for the results that

follow your verdict, either in the eye of the law or in the forum of conscience, than would a sheriff who was compelled in the execution of his duty to carry out the law; no more than the sheriff, for instance, would be responsible if a writ were placed in his hands to take possession of a property inhabited by helpless and penniless people; nevertheless, his duty would be to deliver possession to the owner, regardless of consequences to the individual or individuals, and however his feelings might go out to them, his duty would be plain, and that would be to execute the law, and he would be morally and legally responsible." This was a correct statement of the duty of jurors, calculated to lead them to clear thought and exact pronouncement of verdict.

What we said about the fifth assignment of error applies with equal force to the sixth. The other assignments of error, affecting the charge generally, are without merit. The charge covered all phases of the law applicable to the case, and dwelt upon the possibilities that might arise from the evidence of both sides; and at its conclusion the jury were absolutely free to determine the guilt or innocence of the defendant, and, if the former, the grade thereof. It was a matter which rested solely with them, and which, under our system of jurisprudence, has been wisely committed to their determination.

The judgment of the court below is affirmed, and it is directed that the record be remitted for the purpose of execution.