407 A.2d 418

COMMONWEALTH of Pennsylvania

v.

William E. HURD, Jr., Appellant.

Superior Court of Pennsylvania.

Submitted March 12, 1979.

Decided July 12, 1979.

26

Ambrose R. Campana, Williamsport, for appellant.

Graham C. Showalter, District Attorney, Lewisburg, for Commonwealth, appellee.

Before SPAETH, HESTER and MONTGOMERY, JJ.

SPAETH, Judge:

This is an appeal from judgment of sentence on conviction of robbery, the Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 3701.

The Commonwealth's evidence was as follows. On April 9, 1975, Cindy Green, 17, was at work in a women's clothing store in Lewisburg, Pa. A man came in and, after staying behind a rack until another customer left, approached the counter and told Green to open the drawer. When she refused, he slammed his fist on the counter and told her, "Bitch, open the drawer." His right hand was in his pocket and something in the pocket was pointed at Green; she thought it might be a gun, so she opened the drawer. The man took money and left. Two days later, appellant was arrested on a warrant and charged with the robbery. Green identified him at a lineup (which will be discussed in more detail) and at the jury trial. Appellant was convicted, and this appeal followed.

Appellant first argues that the arrest warrant was not based upon probable cause, and therefore that the ensuing lineup identification was the fruit of an illegality and should have been suppressed. The affidavit upon which the

warrant issued contained various assertions, a number of which did not contribute to the probable cause question.[1] Disregarding those, the pertinent allegations are that a black Cadillac hearse, known to police as appellant's, was seen parked close to the shop at the time of the robbery and leaving town shortly afterwards; that the affiant, who knew appellant from a previous encounter, thought appellant matched the composite drawing of the robber made at Green's description; and that a second person, a state trooper who had seen appellant previously, thought so too. In *Commonwealth v. Culmer*, 463 Pa. 189, 344 A.2d 487 (1975), the Supreme Court found probable cause where an officer made an arrest based on the victim's description and on his own and an informant's impression that the defendant looked like the person depicted in a composite drawing. Similarly, we hold here that the allegations in the affidavit stated probable cause to arrest appellant.[2]

Appellant next argues that there was insufficient evidence to convict him of robbery because there was no evidence that Cindy Green was put in fear of serious bodily injury. The Crimes Code, in § 3701, provides:

(1) A person is guilty of robbery if, in the course of committing a theft, he:

\* \* \* \* \* \*

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury . . . . .

Appellant asserts that no threats were made, and then proceeds to examine Green's testimony to see if it shows

1. For example, Paragraph 1 includes Green's description of the robber as wearing a canvas hat, blue denim jacket, etc. Nowhere else in the affidavit, however, does the affiant link appellant with such clothing.

2. Appellant argues that the affidavit was insufficient because the affiant did not state a basis for finding that two police officers from whom he received information were reliable. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). However, we have held that a police officer's employment and position represent a reasonable basis for concluding that the information the officer supplies is reliable. *Commonwealth v. Barrett*, 233 Pa.Super. 523, 335 A.2d 476 (1975).

that she was in fear. Whether or not this plucky 17-year-old was put in fear,[3] appellant's statement that there were no threats is incorrect. To sustain a conviction under § 3701(a)(1)(ii), the Commonwealth need not prove a verbal utterance, but may show aggressive actions that threaten serious bodily injury. *Commonwealth v. Scott*, 246 Pa.Super. 58, 359 A.2d 809 (1977). It there is such a threat, it is irrelevant that the victim may not have taken the threat seriously. *Commonwealth v. Mays*, 248 Pa.Super. 318, 375 A.2d 116 (1977). Here there was sufficient evidence for the jury to have found that appellant threatened Green with what he intended her to believe was a gun.[4] Such a threat carries with it a threat of serious bodily injury.

■ Appellant next argues that Green's identification was so unreliable that the lower court should not have admitted it,[5] and should have granted his motion in arrest of judgment.[6] This identification evidence was as follows.

Green testified that she had watched appellant closely during the five minutes he was in the store, that the lighting

3. When first asked to open the drawer, Green refused and told appellant she was going to call the man in the back room, although there was no such man. Her reaction to what might have been a gun was cool:
Q. How did you, did you have any reaction to that?
A. Well, there is always a doubt. I wasn't sure if it was a gun or not. That is one reason why I told him I wouldn't open the drawer, but since it stayed in the pocket I just thought maybe I better give him the money.
N.T. at 20.
Still, the fact remains that she thought appellant might have a gun. She also testified that she was "afraid he might punch me or something." *Id.* Under some circumstances that could constitute fear of serious bodily injury. *See Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978).

4. A search warrant executed at appellant's home turned up an inoperable .22 caliber pistol. It was never established that appellant was indeed carrying a gun during the robbery, however.

5. Appellant does not allege that the lineup was suggestive or constitutionally deficient in any way.

6. Appellant also argues the lower court should have granted his demurrer. However, since he did not rest following the overruling of the demurrer, but put on a defense, the correctness of the ruling on

was good, and that appellant was wearing a hat and sun glasses. At the lineup, Green was at first 30 to 35 feet away from the lineup subjects. She identified not appellant, but another man. She was asked if she would like to have a second look. The second time, Green stood only 5 feet from the subjects, and she identified appellant. When the subjects were brought in a third time, she again stood only 5 feet away, and again identified appellant. At trial, she testified that at the lineup she had been certain that the second man she picked was the robber. N.T. 24–25. She explained that her first identification had been mistaken because she had been standing too far from the subjects. The assistant district attorney asked her to stand in front of appellant in the courtroom, and she again identified him:

A. I believe that is the man.

Q. Well, now you believe that is the man. Are you certain or not?

A. Yes, sir, I would say that is the man.

Q. What characteristics did you see in the defendant that would lead you to believe this is the same person?

A. Mustache and dimple in the chin.

Q. Now, are you able to make that identification even though you testified he had sun glasses on and a hat on at the time of the incident?

A. I believe that is him. I never seen him without his sun glasses and hat.

N.T. 24.

On cross examination, Green testified:

A. I identified Mr. Hurd on the night of the lineup with the sun glasses and his hat on.

Q. But today, in court today you are not as sure, is that true?

A. It has been quite a while and he doesn't have his sun glasses and hat.

the demurrer is no longer an appealable issue. *Commonwealth v. Perdie*, 249 Pa.Super. 406, 378 A.2d 359 (1977).

Q. But my question was: You cannot be sure today Mr. Hurd was the man who was in the store?

A. In my personal opinion I believe that is the man.

Q. My question was: You cannot be sure that Mr. Hurd was the man?

A. I am not sure that is the man. That is Mr. Hurd.

 * * * * * *

A. I am not positive, but I believe that is him.

N.T. 30.

On re-direct, Green testified she was "about 95 per cent sure" of her identification. N.T. 35. In addition to his dimple and mustache, she stated that she recognized appellant by his build, N.T. 26; by his voice, N.T. 35; and by his fist, *id.*

▮ In deciding, first, whether the trial judge should have admitted the evidence of the lineup identification, we are mindful of *Commonwealth v. Bennett,* 224 Pa.Super. 238, 303 A.2d 220 (1973), a case involving a witness who repeatedly changed his testimony:

> With each new version Jones would recant the previous one and protest that the newest version was in fact the true one. This situation presented the jury not with a mere conflict or contradiction in testimony which was reasonably reconcilable by them, but a situation falling within the rule: " . . . *when the testimony is so contradictory on the basic issues as to make any verdict based thereon pure conjecture . . . the jury should not be permitted to consider it."*
>
> *Id.,* 224 Pa.Super. at 240, 303 A.2d at 220 (emphasis in original).

In deciding, second, whether the lower court should have granted the motion in arrest of judgment, we must first accept as true all the evidence upon which the trier of fact could properly have based the verdict, and then ask whether that evidence, with all reasonable inferences from it, was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Fortune,* 456 Pa. 365, 367, 318 A.2d 327, 328

(1974); *Commonwealth v. Petrisko*, 442 Pa. 575, 579–89, 275 A.2d 46, 49 (1971). Again, however, guilt must be proved and not conjectured. *Commonwealth v. Wilson*, 225 Pa.Super. 513, 312 A.2d 430 (1973). *See Commonwealth v. Crews*, 436 Pa. 346, 260 A.2d 771 (1970) (evidence that appellants' height, coloring, and color of coat matched those of robbers *held* so insufficient that jury was forced to guess).

 In this case, Cindy Green's identification testimony was not so contradictory as to make it conjectural. True, she was mistaken in her initial identification, but she gave a plausible explanation—that she had been standing too far from the subjects. The contradiction was thus "reasonably reconcilable" by the jury. *Commonwealth v. Bennett, supra.* She then went on to base her identification of appellant on a number of specific details. It is true also that she ultimately testified that she was only 95 per cent sure of the identification. This, however, affects the weight of her testimony, not its admissibility. *Commonwealth v. Whitman*, 252 Pa.Super. 66, 76, 380 A.2d 1284, 1289 (1977).

 Appellant cites *Commonwealth v. Taylor*, 472 Pa. 1, 370 A.2d 1197 (1977). In that case the Supreme Court determined that the pre-trial identification was unconstitutionally suggestive, and then discussed whether there was sufficient evidence that the in-court identification had a basis independent of the tainted identification. In deciding that there was no such basis the Court weighed various factors among them: whether the victim had a good opportunity to view the suspect during the crime (in *Taylor*, the suspect was wearing mirror-type sun glasses; here, sun glasses, though apparently not mirror-type); whether the victim had previously made a mistaken identification of someone else (in *Taylor*, the victim had had no occasion to do so; here, there was a mistaken identification); how certain the victim was (in *Taylor*, he was 90 per cent sure; here 95 per cent). In stressing these similarities, appellant ignores a key distinction between the two cases: that in *Taylor* there had been a suggestive out-of-court identification, while in this case the lineup identification was not suspect in any way. When the Commonwealth has by its pretrial conduct

possibly *planted* a mistaken identification in the victim's mind, it must show, by clear and convincing evidence, an independent basis for the identification. *See, Commonwealth v. Fowler*, 466 Pa. 198, 352 A.2d 17 (1976) (suggestive identification; examination of various factors reveals no independent basis for the in-court identification). On the other hand, when there has been no such taint, the Commonwealth's burden is simply to introduce evidence solid enough to avoid conjecture. *See, Commonwealth v. Crews, supra; Commonwealth v. Bennett, supra.* After that, it is up to the jury to find guilt beyond a reasonable doubt, if at all. Thus, in *Commonwealth v. Harris*, 479 Pa. 131, 387 A.2d 869 (1978), the victim explained that her failure to make an in-court identification was because of changes in the defendant's hair style and mustache. She had had an unobstructed view of the defendant during the crime, and she identified him in a photo array. The Court said:

> Under all of the circumstances we cannot find that the identification was so unreliable that as a matter of law it should not have been accepted by the finder of fact. *Id.*, 479 Pa. at 137, 387 A.2d at 872.[7]

*Compare, Commonwealth v. Wilcox*, 481 Pa. 284, 392 A.2d 1294 (1978) (two witnesses positively identified appellant; a third said he was not the killer; held, evidence sufficient to sustain guilty verdict).[8]

We hold that the lower court did not err in introducing the identification evidence, and that the evidence was sufficient to support the verdict.

**7.** Furthermore, here, as in *Harris*, circumstantial evidence also linked the appellant to the crime.

**8.** Similar considerations lead us to reject appellant's contention that his demurrer and motion in arrest of judgment should have been granted because two witnesses testified that they saw him five miles from the shop at 4:00—the time Cindy Green said the robbery occurred. However the three witnesses gave only approximate times; none was certain of the time. The jury could have resolved the contradiction in a reasonable manner by deciding that either Green or the other witnesses were mistaken as to the time, *see, Commonwealth v. Bennett, supra*, without descending into the forbidden realm of speculation.

■ Appellant next argues that the lower court erred in allowing evidence of prior contact between appellant and the arresting officer. However, this question was not included in appellant's post-verdict motions. Thus it has been waived. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975).

■ Appellant next argues that the lower court in effect ordered the jury to convict appellant if the Commonwealth proved the elements of the crime beyond a reasonable doubt, and that this was impermissible because the jury under such circumstances is still free to acquit. The instructions included the following:

> If you have such a doubt as to any material part of the Commonwealth's case it is your duty to resolve it in favor of the defendant and promptly acquit him. If you have no such doubt it is equally your duty to convict.
> N.T. 137.

> Now, if after considering all of the evidence you find that the Commonwealth has established all of these elements beyond a reasonable doubt you should find the defendant guilty of robbery. If you do not so find you should find the defendant not guilty of robbery.
> N.T. 151.

> If you have a reasonable doubt of the defendant's guilt you must find him not guilty. If on the other hand you have no reasonable doubt that the defendant committed the crime you should find him guilty.
> N.T. 151–152.

Considering the charge to the jury as a whole, *Commonwealth v. Ewell*, 456 Pa. 589, 319 A.2d 153 (1974), we do not read these instructions to show any opinion by the lower court as to appellant's guilt or innocence. As to the court's use of the word "should" and the phrase "duty to convict," in *Commonwealth v. Daynarowicz*, 275 Pa. 235, 119 A. 77 (1922), the Supreme Court approved an instruction to the jury that "if under all the evidence, and under the instructions we shall give you, you would be conscientiously led to the conclusion that your verdict should be one of first

degree, you must not be deterred from doing justice by the probable consequence of your verdict . . . ." *Id.*, 275 Pa. at 239, 119 A. at 79. We find no difference of substance in telling a jury that it "should" convict, and that it "must not be deterred" from convicting the defendant.

■ Finally, appellant argues that he was subjected to an impermissibly long delay between verdict and sentencing. He was found guilty on August 21, 1975, but was not sentenced until May 2, 1978, or almost three years later. The major part of the delay occurred between the filing of the briefs on post-verdict motions (appellant's was filed May 20, 1976, the Commonwealth's on June 7, 1976) and the lower court's denial of those motions on March 23, 1978. Appellant did not complain of this delay to the sentencing court, however, so he has waived it as a ground for relief. *Commonwealth v. Rutherford*, 252 Pa.Super. 348, 381 A.2d 952 (1977); *see, Commonwealth v. Jackson*, 477 Pa. 195, 383 A.2d 890 (1978); *Commonwealth v. Shoemaker*, 462 Pa. 342, 341 A.2d 111 (1975).[9]

Affirmed.

---

9. The claim is of little merit in any case since appellant never asked the lower court to proceed speedily with his sentencing and was free on bail until sentencing. These are two factors that the court in its *dictum* in *Commonwealth v. Rutherford, supra,* considered significant.