J-S74024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN MOUZONE | : | |
| | : | |
| Appellant | : | No. 843 EDA 2017 |

Appeal from the Judgment of Sentence December 1, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009378-2015

BEFORE: BOWES, J., LAZARUS, J., and RANSOM, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 12, 2018**

Brian Mouzone appeals from the judgment of sentence, entered in the
Court of Common Pleas of Philadelphia County, following his conviction for
robbery,[1] attempted theft by unlawful taking,[2] possessing instruments of
crime ("PIC"),[3] and simple assault.[4]  After review, we affirm.

The trial court set forth the factual history of this case as follows:

On August 31, 2015, at about 11:38 p.m., [] Attiq U. Zaman and
Chugtai Karam were working inside a 7-[Eleven] convenience
store located at 3359 Kensington Avenue in Philadelphia when
[Mouzone] entered the store and went down one of the aisles
where he lingered a short while.  [Mouzone] then walked up to the

---

[1] 18 Pa.C.S.A. § 3701.

[2] 18 Pa.C.S.A. § 2702.

[3] 18 Pa.C.S.A. § 907.

[4] 18 Pa.C.S.A. § 2701.

store's checkout counter where he ordered [Karam], who was standing by [] one of the store's cash register[s], to, "Give it up." [Mouzone] had his hand inside of a bag and pointed the bag covered hand at both Zaman and Karam, which worried Zaman because he believed that [Mouzone] had a gun or an explosive inside the bag. [Mouzone] then told Zaman, who was standing next to a second cash register, to "Give it up." Zaman believed that [Mouzone] was asking him and Karam to surrender the money in the register.

In response to [Mouzon's] actions, Karam picked up a stick kept behind the counter and Zaman backed away from the register and began dialing 911. As Zaman was attempting to contact the police, [Mouzone] began walking toward the exit where he was intercepted by Philadelphia Police Officers [] [Layton] and [] Ballinger, who had been across the street at the time and walked over to the store after someone approached them. When the officers approached the store[,] they unholstered their service revolvers and aimed them at [Mouzone], who immediately surrendered after complying with the officers' directive that he drop the bag, which he was still holding.

[Mouzone] testified in his own defense[,] stating that when he entered the store he was under the influence and intended to steal something to eat. However, when the clerks in the store said something he believed to be demeaning he began arguing with them. [Mouzone] denied saying, "Give it up[,]" and stated that he actually stated, "What's up?" which, according to [Mouzone] was misinterpreted by [Zaman]. He denied that he entered the store with the intention to commit robbery.

Trial Court Opinion, 5/15/17, at 2-3 (quotations and citations to record omitted).

On December 1, 2016, following a waiver trial, the trial court found Mouzone guilty of all of the foregoing charges. On February 10, 2016, following the denial of Mouzone's motion for extraordinary relief, the trial court imposed an aggregate sentence of four to ten years' imprisonment plus a concurrent term of five years' probation. Mouzone filed a post-sentence

motion for reconsideration of sentence, which the trial court denied on February 24, 2017. On March 6, 2017, Mouzone timely appealed. Both Mouzone and the trial court have complied with Pa.R.A.P. 1925. On appeal, Mouzone raises challenges the sufficiency and weight of the evidence as to his robbery charge only.

Mouzone first claims that the evidence was insufficient to establish a conviction for robbery. Specifically, Mouzone avers that he never asked either of the clerks to "give it up," but rather, attempted to engage in a physical confrontation without weapons with the clerks and stated, "What's up?" Mouzone argues that the clerks' poor English caused this misunderstanding.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Valentine*, 101 A.3d 801, 805 (Pa. Super. 2014) (brackets omitted), quoting *Commonwealth v. Devine*, 26 A.3d 1139, 1145 (Pa. Super. 2011).

The robbery statute provides, in relevant part, as follows:

**§ 3701. Robbery**

**(a) Offense defined.--**

(1) A person is guilty of robbery if, in the course of committing a theft, he:

> (i) inflicts serious bodily injury upon another;
>
> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
>
> (iii) commits or threatens immediately to commit any felony of the first or second degree;
>
> (iv) inflicts bodily injury upon another or ***threatens another with or intentionally puts him in fear of immediate bodily injury***;
>
> (v) physically takes or removes property from the person of another by force however slight; or
>
> (vi) takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

18 Pa.C.S.A. § 3701 (emphasis added). Taking from the person of the victim is not required throughout the robbery statutes. *Commonwealth v. Brandon*, 79 A.3d 1192, 1195 (Pa. Super. 2013), citing *Commonwealth v. Lloyd*, 545 A.2d 890, 892 (Pa. Super. 1988) (jury could find "that appellant

committed robbery even though he was unsuccessful in obtaining the victim's money"). Additionally, where a defendant threatens a victim with what he intends the victim to believe is a gun, the evidence is sufficient to sustain a robbery conviction based on a finding that the defendant intended to put the victim in fear of serious bodily injury. *Commonwealth v. Hurd*, 407 A.2d 418, 420 (Pa. Super. 1979).

Mouzone, admittedly, entered the 7-Eleven with the intent of committing theft. *See* N.T. Waiver Trial, 11/30/16, at 50 ("Q. What were you going to do in the 7-Eleven? A: I was going to steal."). After entering the 7-Eleven, Mouzone simulated possessing a dangerous weapon by placing his hand in a bag and pointing it at the 7-Eleven clerks. *Hurd*, *supra*. At trial, Zaman stated that he thought Mouzone had "some gun or some sort of explosive in the bag which he had in his hand," which "made [him] scared to move backwards."[5] N.T. Waiver Trial, 11/30/16, at 19. Mouzone repeatedly demanded that the 7-Eleven clerks "give it up." The clerks interpreted this to mean that Mouzone was asking them to give him the money in the register. The clerks refused Mouzone's demands, and when Zaman called 911, Mouzone attempted to flee before police officers apprehended him inside of the store. Based upon the foregoing, sufficient evidence supported Mouzone's conviction

---

[5] Police recovered no firearm or weapon from the scene, and there is no indication from the record or otherwise that Mouzone ever possessed a firearm or weapon. The record indicates that Mouzone simply placed an opaque bag over his hand and pantomimed possessing a weapon.

- 5 -

for robbery, even in light of the fact that Mouzone's robbery attempt was fruitless. *See Hurd*, *supra*; *Brandon*, *supra*.

Mouzoune next challenges the weight of the evidence, asserting that the verdict shocks the conscience because he did not say, "Give it up," but rather, "What's up?" Mouzone's argument hinges on whether or not the trial court found credible his testimony that Zaman's understanding of spoken English is imperfect, and thus, the 7-Eleven clerks misunderstood what he claims to have said and his true intentions.

We review a weight of the evidence claim according to the following standard:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [fact-finder's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Karns*, 50 A.3d 158, 165 (Pa. Super. 2012) (citation omitted).

The trial court determined that Zaman's testimony was credible and that of Mouzone not worthy of belief. This was, in part, because a video recording of the incident corroborated Zaman's testimony, and Zaman convinced the

trial court that his understanding of spoken English was proficient. Specifically, Zaman exhibited spoken English proficiency when he testified at a preliminary hearing in English and Zaman informed the trial court that he was educated in the United States. The trial court found Zaman understood spoken English and that his testimony that Mouzone stated, "Give it up" was credible.[6] *See Commonwealth v. Cousar*, 928 A.2d 1025, 1036 (Pa. 2007) (rejecting challenge to weight of evidence on basis of witness credibility where fact-finder credited testimony of witnesses who had been subjected to cross-examination). Moreover, Mouzone's pantomiming of holding a weapon or gun in his hand underneath the bag does not require an understanding of the English language, and thus, his understanding of spoken English was not necessary for the Commonwealth to prove robbery beyond a reasonable doubt. The trial court did not abuse its discretion in finding the weight of the evidence supported a conviction for robbery. *Karns*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/18

---

[6] Zaman's coworker, the other clerk in the 7-Eleven at the time of the robbery, did not testify at Mouzone's waiver trial.

- 7 -