J-S12015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAMAR E. WILLIAMS | : | |
| | : | |
| Appellant | : | No. 847 EDA 2021 |

Appeal from the Judgment of Sentence Entered January 17, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51CR-0003539-2017

BEFORE:  BENDER, P.J.E., BOWES, J., and DUBOW, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED MAY 25, 2022**

Appellant, Lamar E. Williams, appeals *nunc pro tunc* from the January 17, 2020 judgment of sentence of five to ten years' incarceration, followed by one year probation, imposed after a jury convicted him of robbery (threat of serious bodily injury), and possessing an instrument of crime (PIC).[1]  On appeal, Appellant challenges the sufficiency of the evidence to sustain his robbery conviction, as well as the court's admission of certain evidence.  After careful review, we affirm.

The trial court summarized the facts underlying Appellant's convictions, as follows:

> On the evening of January 21, 2017, Debra Mason (the Complainant), Eden Assefa, Vondell Haynes, and Shavida Jones were working at the Lot K parking lot booth located at Pattison Avenue and Lincoln Financial Way.  At approximately 7:30 p.m.,

---

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii) and 907(a), respectively.

[] Appellant entered the parking lot booth to commit a robbery. During the robbery, [] Appellant shoved an unidentified object into Vondell Haynes's back and told her not to move. He then shoved the object into the Complainant's back and demanded money from her. Although the Complainant and Haynes did not see the object, the Complainant said it was made of hard metal and felt like the barrel of a gun.[2] After the Complainant gave him $620.00, [] Appellant pushed her aside and looked for more money. At that point, the Complainant fled the booth.

After fleeing, the Complainant tried locking [] Appellant in the booth. While attempting to lock the door, the Complainant and Haynes saw [] Appellant's face through the window of the booth.[23] However, before the Complainant could lock the door, an unidentified individual helped [] Appellant to escape.

[23] The Complainant testified that she was able to see [] Appellant's face through the parking booth's window. [N.T., 7/17/19, at] … 116[.] Vondell Haynes testified that she was able to see [] Appellant's face through the parking booth's window. [N.T., 7/18/19, at] … 91[.] The Complainant testified that the parking lot booth was lit by four fluorescent lights. [N.T., 7/17/19, at] … 114[.] The Complainant testified that although [] Appellant had a hoodie on during the robbery, she could see his entire face without a problem. [*Id.* at] … 116[.] [Ms.] Haynes testified that while [] Appellant was fleeing the scene, she was able to see his face. She further testified that she was within 1.5 feet of [] Appellant, the area was well-lit, and she does not suffer from any vision issues at night. [N.T., 7/18/19, at] … 90-93.

Later that evening, the Complainant met detectives at South Detectives Police Station to discuss what had occurred. In her initial interview, the Complainant stated that [] Appellant was "five feet six inches to five feet seven inches" tall. On January 24,

_____

[2] Specifically, the Complainant testified that Appellant "shove[d her] against a desk and put something very hard and firm in [her] back…[.]" N.T., 7/17/19, at 109. She explained that the object in her back was "round and hard" and "like a metal-ish type thing." *Id.* at 110, 121. The Complainant testified that she was "familiar with guns" and that the object Appellant held to her back "felt round like a barrel of a gun." *Id.* at 121. She "[a]bsolutely" believed Appellant was holding a gun to her back. *Id.*

2017, the Complainant was shown a photo array to identify who committed the robbery, and she picked [] Appellant's photo (third in the array) as the perpetrator. The Complainant also identified [] Appellant as the assailant at trial. [Ms.] Haynes also identified [] Appellant as the robber in a photo array and at trial. Two days before the robbery (1/19/2017), Kasha Williams, [] Appellant's sister and an employee of SP Plus Parking, gave [Ms.] Haynes a ride home from work. During the ride, [Ms.] Haynes overheard a FaceTime phone conversation between Kasha Williams and [] Appellant.[31] Although [Ms.] Haynes had never met [] Appellant, and was unable to identify his voice at the time, she was able to match his voice after the robbery. [Ms.] Haynes was certain that the voice she heard Kasha Williams speaking with on the FaceTime call was the voice of the man who committed the robbery on January 21, 2017. During the investigation and trial, [Ms.] Haynes also identified [] Appellant's voice as the robber.

> [31] [Ms.] Haynes testified that Kasha Williams was on the phone with her brother, [] Appellant. [N.T., 7/18/19, at] … 108.

Trial Court Opinion (TCO), 10/7/21, at 4-5 (some footnotes omitted).

Based on these facts, Appellant was arrested and charged with robbery and PIC, as well as several other offenses including theft, receiving stolen property, recklessly endangering another person, and conspiracy.

A jury trial was conducted from November 15, 2018[,] to November 19, 2018, but resulted in a hung jury. A new trial was subsequently scheduled. On July 7, 2019, [] Appellant filed a motion *in limine* to bar testimony from [Ms.] Haynes relating to [the] telephone conversation she overheard between [] Appellant and his sister, Kasha Williams. This motion was denied.

A new trial was conducted … and on July 19, 2019, a jury convicted [] Appellant of robbery [(]threat of serious injury[)] and PIC. On January 17, 2020, the court sentenced [] Appellant to [five to ten] years['] incarceration on the robbery offense and [one] year of consecutive probation on the PIC offense.

On January 26, 2020, [] Appellant filed a post-sentence motion. [] Appellant subsequently filed a Post[]Conviction Relief Act

(PCRA) Petition[3] on October 25, 2020. On March 24, 2021, the court granted the petition in part and denied it in part. On April 22, 2021, [] Appellant filed a [*nunc pro tunc*] notice of appeal to the Superior Court, and the court filed its [Pa.R.A.P.] 1925(b) order [for Appellant to file a concise statement of errors complained of on appeal] on April 27, 2021. On May 18, 2021, [] Appellant filed his [concise] statement of [errors] complained of on appeal….

*Id.* at 1-2 (some footnotes and unnecessary capitalization omitted). The trial court filed its Rule 1925(a) opinion on October 7, 2021.

Herein, Appellant states two issues for our review, which we reorder for ease of disposition:

I. Whether the evidence [was] insufficient to sustain the verdict of guilt for robbery because the Commonwealth failed to prove that the [C]omplainant was threatened with or placed in fear of immediate serious bodily injury[?]

II. Whether the trial court erred in denying Appellant's motion *in limine* to preclude Vondell Haynes['s] testimony regarding a FaceTime call she overheard while in Appellant's sister['s], Kasha Williams[,] vehicle[?]

Appellant's Brief at 4.

To begin, we note our standard of review of a challenge to the sufficiency of the evidence:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it

---

[3] 42 Pa.C.S. §§ 9541-9546.

links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

Instantly, Appellant challenges his conviction for robbery under 18 Pa.C.S. § 3701(a)(1)(ii).

To sustain a conviction for first-degree robbery under [s]ection 3701(a)(1)(ii), the Commonwealth must establish that "in the course of committing a theft," the defendant "threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S.[] § 3701(a)(1)(ii). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S.[] § 3701(a)(2).

A conviction under [s]ection 3701(a)(1)(ii) is contingent upon the type of bodily harm threatened. ***See Commonwealth v. Ross***, 570 A.2d 86, 87 ([Pa. Super.] 1990) (evidence sufficient to show appellant, by the use of an upraised knife, threatened the victim with serious bodily injury), *appeal denied*, 593 A.2d 417 ([Pa.] 1990). The Commonwealth need not prove a verbal utterance or threat to sustain a conviction under [s]ection 3701(a)(1)(ii). ***Commonwealth v. Hopkins***, 747 A.2d 910, 914 (Pa. Super. 2000) (citations and quotation marks omitted). It is sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety. ***Id.*** For the purposes of [s]ection 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of "immediate serious bodily injury." ***Id.*** (citations omitted). Thus, a reviewing court will consider the defendant's intent and actions and not necessarily the subjective state of mind of the victim. ***Commonwealth v. Rodriquez***, 673 A.2d 962, 966 ([Pa. Super.] 1996); ***see Commonwealth v. Nelson***, 582 A.2d 1115, 1118 ([Pa. Super.] 1990) ("The fact that the threat may not have produced the intended fear is irrelevant."), *appeal denied*, 593 A.2d 840 ([Pa.] 1991); ***see also Commonwealth v. Mays***, 375 A.2d 116, 117-18 ([Pa. Super.] 1977) (noting that it is irrelevant that the victim may not have taken the threat seriously).

***Commonwealth v. Ouch***, 199 A.3d 918, 923–24 (Pa. Super. 2018).

Here, Appellant claims that the evidence that he "placed an unknown[,] hard object to [the C]omplainant['s] … back and demanded money" was insufficient to establish that he threatened her with immediate serious bodily injury. Appellant's Brief at 21. He notes that "[t]his Court has held that the mere act of pointing a gun at another person is not *per se* evidence of a threat to cause serious bodily injury for purposes of an aggravated assault conviction." **Id.** at 22 (citing **Commonwealth v. Alford**, 880 A.2d 666, 671 (Pa. Super. 2005) (citation omitted)). Appellant maintains that, "[w]hile [he] was convicted of robbery, [this] Court's ruling in **Alford** is instructive. If the mere act of pointing a gun is insufficient [for aggravated assault], then the mere act of pushing an unknown object into someone's back and demanding money is insufficient to establish a threat to cause immediate serious bodily injury." **Id.** Additionally, "Appellant recognizes that this Court has never held that the brandishing of a weapon or making a specific verbal threat is required to sustain a conviction under [s]ection 3701(a)(1)(ii)." **Id.** at 22-23 (citing **Commonwealth v. Bragg**, 133 A.3d 328, 332 (Pa. Super. 2016)). However, he "urges [our] Court to do so." **Id.** at 23.

Appellant's argument is unconvincing. Initially, we agree with the Commonwealth that in relying on **Alford**, Appellant "misunderstands the difference between robbery and aggravated assault." Commonwealth's Brief at 11 n.6. "A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference

to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). Thus, aggravated assault requires the Commonwealth to prove, *inter alia*, that the defendant caused, or intended to cause, serious bodily injury. Robbery, on the other hand, only requires proof of an intent to **put another in fear of** serious bodily injury. In **Alford**, we held that the appellant's act of pointing a gun at the victim, without more, was insufficient to prove that he intended to **actually cause** her serious bodily injury, as required for aggravated assault. **See Alford**, 880 A.2d at 670-71. However, because robbery requires only the intent to place another **in fear of** serious bodily injury, **Alford** is not controlling.

Instead, we conclude that our decision in **Commonwealth v. Taylor**, 831 A.2d 661 (Pa. Super. 2003), is analogous to the instant facts. There, we found that the evidence was sufficient to sustain Taylor's conviction for robbery under section 3701(a)(1)(ii) where Taylor "pressed a hard object into [the victim's] body, and demanded that she give him money from the register and the safe." **Id.** at 664. Here, as in **Taylor**, the Complainant testified that Appellant shoved her, placed against her back a hard, round object that felt like a gun, and told her to "give him the fucking money." N.T., 7/17/19, at 109, 110. When the Complainant "told [Appellant] to please get out of the booth" because she thought he was joking, Appellant "pushed [her] harder[,] … stuck whatever it was in [her] back even harder[,] … told [her] he wasn't kidding[,] and told [her] to give him the fucking money again." **Id.** at 110.

The Complainant testified that she absolutely believed that the object against her back was a gun. *Id.* at 121.

We disagree with Appellant that "[t]he appellant's actions in *Taylor* were far more menacing than the testimony in the case at bar" because "Taylor did not merely push a hard object into the complainant's body, but grabbed her, twisted her arm, and pushed her." Appellant's Brief at 21. Initially, as is evident from the quoted language of *Taylor*, above, our holding in that case was premised on Taylor's pressing a hard object into the victim's body while demanding money, which mirrors Appellant's actions in the present case. We did not also cite the fact that Taylor grabbed and pushed the victim, or that he twisted her arm. In any event, Appellant did shove the Complainant, and then pushed the object into her back harder and said he was not joking when she asked him to leave the booth. Thus, Appellant's actions were as physically menacing as Taylor's, and the evidence in this case was sufficient to demonstrate that Appellant threatened the Complainant with, or intentionally put her in fear of, immediate serious bodily injury. *See also Commonwealth v. Hurd*, 407 A.2d 418, 420 (Pa. Super. 1979) (finding that Hurd's holding his hand in his pocket in a manner suggesting that he was pointing a gun at the victim was sufficient to prove that he intended to put the victim in fear of serious bodily injury). Accordingly, Appellant's first issue is meritless.

Next, Appellant argues that the trial court erred in denying his motion *in limine* to preclude evidence of Vondell Haynes's following statements to police on the night of the robbery:

[Police:] Is there anything else you would like to add?

[Ms. Haynes:] The night before last[,] I was driving home with my coworker Casha [*sic*] Williams[,] and her brother [F]ace[T]imed her on her cell phone. He asked if she was still … at work[,] and she said don't do it, don't come up here. He said[, "]I'm coming up there and gonna get it.["] She hung up on him[,] and she said I don't want anything to do with this.

[Police:] Did you see the male she was on the phone with or do you recognize the male's voice from tonight?

[Ms. Hayes:] I didn't see the phone but it was her brother tonight with the grey sweatsuit, I recognized his voice.

Motion *In Limine*, 7/7/19, at 4 (quoting Haynes's Statement to Police, 1/21/17, at 2). Appellant also sought to preclude Ms. Haynes from testifying "that a voice that she heard, on the night of the robbery, on the highway, from one of the assailants, was the same voice that Hayes [*sic*] overheard during Kasha Williams's cell phone conversation in Kasha's car with the unknown person." ***Id.*** at 5.

Appellant contends that this evidence should have been excluded because it was not properly authenticated under Pennsylvania Rule of Evidence 901, which states, in pertinent part:

**(a) In General.** Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

**(b) Examples.** The following are examples only--not a complete list--of evidence that satisfies the requirement:

*\*\*\**

(5) *Opinion About a Voice.* An opinion identifying a person's voice--whether heard firsthand or through mechanical or electronic transmission or recording--based on hearing the voice at any time under circumstances that connect it with the alleged speaker.

(6) *Evidence About a Telephone Conversation.* For a telephone conversation, evidence that a call was made to the number assigned at the time to:

(A) a particular person, if circumstances, including self-identification, show that the person answering was the one called; or

(B) a particular business, if the call was made to a business and the call related to business reasonably transacted over the telephone.

Pa.R.E. 901(a), (b)(5)-(6).

Instantly, Appellant contends that,

Ms. Hayes [*sic*] was not even a party to the conversation at issue. No other individuals were present for this conversation to corroborate Ms. Hayes'[s] [*sic*] account. She admitted that she had never met Appellant in person nor heard his voice prior to this alleged FaceTime call. Other than overhearing a voice on Kasha Williams'[s] phone two days prior, the only other occasion she claims to have observed Appellant's face or heard his voice was at the time of the robbery. Ms. Hayes [*sic*] did not have the requisite familiarity with Appellant's voice sufficient to establish identification under Rule 901.

There is no evidence establishing how [Ms.] Hayes [*sic*] knew Kasha Williams was on the phone with a sibling, let alone … Appellant. She did not allege that she observed Appellant's face on the screen of Ms. Williams'[s] phone. Ms. Hayes [*sic*] never stated that Appellant identified himself on the telephone or that Ms. Williams indicated she was on the phone with Appellant. There is no evidence that the perpetrators of the robbery or Appellant possessed any unique speech patterns such as an accent, stutter, voice pitch, or pace. Simply stated, [Ms.] Hayes [*sic*] was a third party to a brief FaceTime conversation, overheard on a cell phone speaker, hearing a person's voice whom she never

- 10 -

met before, while sitting in the passenger seat of a vehicle a few feet away from the phone. This is insufficient to permit trial testimony regarding identification and the lower court should have granted Appellant's motion *in limine* to preclude this testimony.

Appellant's Brief at 18-19.

To support his position, Appellant relies on one case – **Commonwealth v. Carpenter**, 372 A.2d 806 (Pa. 1977). There, Carpenter's girlfriend was found dead in her home and, while her family members and police were at the scene of the murder, the phone rang. *Id.* at 808. A family member of the victim answered the phone and recognized the voice of the caller to be that of Carpenter. *Id.* The family member advised a detective that the caller was Carpenter and handed the phone to the detective, at which point Carpenter made incriminating remarks to the detective. *Id.* Our Supreme Court concluded that the detective's testimony regarding Carpenter's inculpatory statements during the phone call were admissible, as "the inference that it was Carpenter who spoke to [the detective] was entirely reasonable." *Id.* at 809. The Court explained that the family member who answered the call "testified that he knew Carpenter for about two or three years, that he had spoken to him many times in person and on the telephone, and, with respect to this particular telephone call, that he positively identified the caller's voice to be Carpenter's." *Id.*

The **Carpenter** Court also affirmed the admission of testimony concerning another call between Carpenter and a different family member of the victim. That family member testified that "she knew Carpenter and had conversed with him approximately five or six times in person, as well as three

- 11 -

or four times on the telephone[,]" and that "she was able to recognize his voice." *Id.* The Court held that "[t]his evidence was clearly sufficient to support a finding by the jury that it was Carpenter who telephoned [that family member], and, as such, established the foundation requisite to permit testimony as to the substance of the conversation." *Id.* The Court observed that, to the extent Carpenter argued that the witness's "credibility was patently defective because of alleged inconsistencies between her trial testimony and earlier statements," such "inconsistencies, if any, did not bear on the question of admissibility, but rather were properly a matter for the jury to consider in determining the weight to be afforded [to that witness's] testimony." *Id.* (citing *Commonwealth v. Farquharson*, 354 A.2d 545 (Pa. 1976)).

While we agree with Appellant that the facts of his case are distinguishable from *Carpenter*, we disagree with his conclusion that the court should have suppressed Ms. Haynes's testimony identifying Appellant as the person who called Kasha Williams, or explaining the content of that call. Obviously, Ms. Haynes was not as familiar with Appellant's voice as the witnesses were with the defendant's voice in *Carpenter*. However, as the trial court observes, this Court "has held that authenticating evidence requires a low burden of proof." TCO at 6 (citing *Commonwealth v. Murray*, 174 A.3d 1147, 1157 (Pa. Super. 2017) ("[A]uthentication generally entails a relatively low burden of proof; in the words of Rule 901 itself, simply 'evidence sufficient to support a finding that the item is what the proponent claims.'")

(citations omitted)). Moreover, we agree with the court that "one can generally authenticate a voice **at any time**[,] so long as a listener can recognize a speaker's voice." **Id.** (citing Pa.R.E. 901(b)(5) (stating that authentication can be accomplished by "[a]n opinion identifying a person's voice--whether heard firsthand or through mechanical or electronic transmission or recording--based on hearing the voice at any time under circumstances that connect it with the alleged speaker")) (emphasis added).

Here, the court concluded that Ms. Haynes had sufficiently authenticated Appellant's identity as the caller to Ms. Williams, explaining:

> [Ms.] Haynes testified that, although she could not identify who the caller was at the time of the phone call, she was able to later identify [] Appellant's voice during the robbery. Hence, although [Ms.] Haynes was not a party to the call, she was able to authenticate [] Appellant's voice and conclude that he was the robber.
>
> As previously mentioned, a witness is permitted to authenticate a voice at any time. It does not matter whether a witness has only a retroactive frame of reference. **See** Pa.R.E. 901(b)(5). In this case, [Ms.] Haynes established that she was familiar with [] Appellant's voice because she heard it on two separate occasions. As our [a]ppellate [c]ourts have made clear, [Ms.] Haynes's limited opportunity to familiarize herself with [] Appellant's voice goes to the weight of the evidence — not admissibility. This is especially true since [] Appellant had an opportunity to cross-examine the witness.

TCO at 7 (footnoted citations omitted).

We discern no abuse of discretion in the court's decision. Ms. Haynes heard Appellant's voice at the time of the robbery, and retroactively identified him as the person she had heard speaking to Ms. Williams' on the FaceTime call two days before the crime. Additionally, as the Commonwealth points

out, Ms. Haynes's identification of Appellant as the person speaking with Ms. Williams via FaceTime was corroborated by "evidence that [Appellant] and [Ms. Williams], his sister, communicated with each other via FaceTime calls with great frequency, including on January 19, 2017, two days before the robbery, when [Ms.] Haynes observed [Ms. Williams] participating in the FaceTime call with the person whose voice [Ms.] Haynes later identified as [Appellant]." Commonwealth's Brief at 15 n.8 (citing N.T., 7/18/19, at 162 (testimony stating that there were approximately 19 attempted or completed FaceTime calls between Appellant and Ms. Williams on January 19, 2017, and 15 attempted or completed FaceTime calls on January 21, 2017, the date of the robbery)).

In sum, Ms. Haynes's testimony, and the evidence that Appellant and Ms. Williams had numerous FaceTime calls on the day Ms. Haynes alleged that she overheard a FaceTime call between the two, was sufficient to support a finding by the jury that it was Appellant who placed the call to Ms. Williams that was overheard by Ms. Haynes. Therefore, Ms. Haynes's testimony concerning the content of that call was admissible, as was her later identification of Appellant's voice as that of the robber. To the extent Appellant challenges the credibility of this evidence, that claim goes to its weight, not admissibility. Accordingly, Appellant's second claim does not warrant relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/25/2022